STOKER, Judge.
This is a tort suit in which the plaintiff, Elnoria Zone, seeks recovery of damages for the allegedly illegal entry of her home on two occasions by law enforcement officers seeking to execute arrest warrants. The trial was by jury, and the verdict was in favor of defendants. Plaintiff appeals. We affirm.
The defendants are the Town of Bunkie, three members of the Bunkie police force and their insurer, Ideal Mutual Insurance Company. The defendant members of the police force are Officers Burlin Buxton and Floyd Ducote and the Bunkie Police Chief, Charles Condella.
The dates of the entries complained of are April 15, 1980, and April 21, 1980. The defendants admit that they entered plaintiff’s home but defend on the ground that they were given permission by her to enter and search for the persons for whom they held arrest warrants. The defendants did not have search warrants authorizing them to search plaintiff’s home on either occasion and plaintiff denies that she ever gave permission to the officers to enter her house. On the first occasion Officers Burlin Bux-ton, Floyd Ducote, and Bobby Hiddon went to plaintiff’s home in Bunkie, Louisiana, with an arrest warrant for one Arthur Birdlong. According to the officers the plaintiff unhooked her screen door after she agreed to permit them to make the search and they entered. At that time a black male by the name of Louis Sanders was on a couch apparently asleep. Louis Sanders testified on behalf of plaintiff and supports her version of the affair.
On the second occasion, April 21, 1980, Floyd Ducote was accompanied by Chief Condella and also by Captain Burton Dau-zat, a deputy sheriff of Avoyelles Parish. CajJtain Dauzat did not enter the house but was standing some 25 feet away at the side of the house and heard the officers request the plaintiff’s permission to enter and make a search for her brother Donald Ray Zone also known as Donald Ray Johnson. Again the Bunkie police officers contend that they were given permission to enter and search and that plaintiff unhooked the screen door and permitted them to enter.
Besides Louis Sanders, various other disinterested witnesses were called and testified on behalf of plaintiff-appellant. Three witnesses who resided across the street from plaintiff were called on behalf of defendants and testified on their *1353 behalf. The brief facts stated above present essentially a credibility question which the jury resolved in favor of the defendants. It is well settled that where there is conflicting testimony, a reasonable evaluation of credibility made by the trier of facts should not be disturbed upon appellate review unless manifestly erroneous. Canter v. Koehring Company, 283 So.2d 716 (La.1973) and Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Our review of the record in this case does not reveal any clear error in the factual conclusions evidently reached by the jury. We will not disturb the jury’s findings.
In addition to complaining of the jury’s verdict, plaintiff-appellant raises other issues in this appeal.
GENERAL OBJECTIONS TO THE JURY SELECTION
After the jury was selected but before any evidence was taken appellant’s counsel made a general objection to the jury impaneled to try the case on the ground that the jury “was not a jury representative of [plaintiff-appellant’s] peers.” The trial court overruled this objection and the trial proceeded. Appellant’s complaint is stated as follows in her brief filed in this court:
“After a trial by an all white jury, a Judgment was signed against petitioner on March 27, 1981. Two of the twelve jurors opposed the decision in favor of the defendants.
“As the court will note from the transcript, the selection of the jury was not transcribed, unfortunately. One basis for this appeal is that of all the perspective (sic) jury members called to the stand only one was black. After an entire day of questioning perspective (sic) jurors, attorneys for petitioner were only allowed to question one perspective (sic) black jury member. The jury consisted entirely of an upper middle class white jury, bearing in mind that Elnoria Zone is a young uneducated black woman with several illegitimate children and her sole means of support is derived from welfare, social security, and other federal programs.
“Realizing the injustice that had taken place, attorneys for Elnoria Zone objected to the jury prior to the questioning of any witnesses on the grounds that the jury selection was not a jury representative of Elnoria Zone’s peers. On page 51 of the transcript, Attorney Carol J. Aymond, Jr., stated the objection to the Honorable Judge B. C. Bennett as follows, to-wit:
‘By Mr. Aymond: In conjunction with the selection of the jury, we would like to object to the selection of the petit jury and base an objection with all due respect to everyone on the ground that the jury is not a representation of the peers of Miss Elnoria Zone and specific detail that we were only able to allow questioning of one black and that the population of Avoyelles Parish is greatly beyond that and we feel like the peer, the jury is not a representation of her peers and she is entitled to a trial by her peers and with that in mind we would like to enter that objection, with all due respect to everybody involved.’
‘By Judge Bennett: And your motion is made and it is ... (inaudible) ... of the entire panel questioned today only one black person was called; however that was done by ... do I hear . . . I’m going to rule against it because ... it was done by lot and because of that this is how it came out; I’m going to
‘By Mr. Boatner: That could show some irregularities, Your Honor . ..’”
Appellant has not indicated any irregularities in the jury selection process and bases her claim entirely on the charge that she was not tried by a jury of .her peers. As contained in her brief the argument in support of this claim is as follows:
“.. . there were no blacks on the jury and all of the jury members were middle *1354 class and in the higher income brackets. None of the jury members received any type of social security or any other type of federal benefits. It is very interesting to note that Mr. Boatner himself, the defense attorney, pointed out that the selection of the jury and the jury that sat to hear the case had ‘irregularities’.
“It is fundamental and basic law that everyone has a right to a trial by jury of his peers. Certainly, this was not a jury of Elnoria Zone’s peers, in light of the fact that she is black, on welfare, and has illegitimate children. She was being judged by an all white, upper middle class group of people.”
Even if the record supported all of the factual allegations made in appellant’s brief, we know of no basis on which the trial could be invalidated on these facts alone. We find no merit to appellant’s complaint in this regard.
Appellant urges that defendant’s counsel agreed with her objection that the jury selected did not represent a jury of her peers. She urges that the response by Mr. Boatner quoted above indicates such an agreement. Defendant’s counsel argues that what appears as a statement by him was in reality posed as a question. In any event we are not impressed with appellant’s argument which carries the implication that in appellant’s case a jury of her peers necessarily must consist of all black mothers of illegitimate children whose sole support is derived from welfare, social security and “other federal programs”.
WAS APPELLANT PREJUDICED BY RESPONSES OF CHIEF CONDELLA?
Counsel for plaintiff-appellant called Chief Condella on cross examination. During the cross examination in answer to a question, Chief Condella made a statement which could be understood as a charge that plaintiff’s counsel was suing Chief Condella personally. In brief appellant does not state how she is prejudiced by this remark. In fact, although the trial court instructed the jury to disregard the remarks, counsel never registered any objection beyond the expressed desire that the jury understand that neither he or his co-counsel were suing anyone.[1]
Viewed in context and particularly in view of the trial judge’s admonition to the *1355 jury we feel that the jury was not biased by the remarks of the witness.
WAS APPELLANT PREJUDICED BY REFERENCES MADE BY DEFENSE COUNSEL IN CLOSING ARGUMENT?
In the closing argument before the jury, counsel for defendants referred to three witnesses who lived across the street from plaintiff-appellant who testified in behalf of defendants. Defense counsel stated: “Now, let’s talk about these three ‘dockies’ (phonetically spelled) that testified that lived across the street . .. ”. Counsel for plaintiff-appellant made no contemporaneous objection but complains in brief that by referring to these witnesses as “dockies” an element of racism was injected into the argument which was prejudicial to appellant. In view of counsel’s failure to timely object, appellant waived any valid complaint she may have had. Carver v. Cabiro, 381 So.2d 969 (La.App. 4th Cir. 1980), writ denied, 383 So.2d 782 (La.1980).
Assuming, however, that an appeal to prejudice may not, under some circumstances, be cured or counteracted through admonition by the court upon proper objection, we nevertheless fail to see how plaintiff-appellant was prejudiced. In using the term “dockies” defense counsel was referring to defendant’s witnesses and not to appellant.[2] Nor was the term used with reference to any of appellant’s witnesses.
We deem this complaint to be without substance.
CONCLUSION
The primary issue in this appeal is a question of fact. In view of appellant’s suggestion that racial prejudice was responsible for the jury’s verdict, we have carefully considered the record to discover any evidence to support this claim. We find none. For the foregoing reasons we affirm the judgment of the trial court. Plaintiff-appellant is cast with the costs of this appeal.
AFFIRMED.

. The testimony in question given on cross-examination and the statements of counsel and the trial court are recorded as follows:
“Q. You don’t know? Do you realize that the Court cannot subpoena you unless one of the attorneys requests it?
A. Well you are the one who requested me being subpoenaed up here.
Q. Are you sure of that?
A. I’m not real sure, I don’t know.
Q. You don’t know?
A. You’re suing me, I’m not suing you.
Q. You’re suing me?
A. You and your client, you’re going to get a third of the money if you win the case, so I’m sure you are part of it.
Q. Think well of what you’re saying Chief and realize that you are under oath . ..
BY MR. BOATNER:
Your Honor, I’m going to object to this line of questioning, it’s immaterial and ...
BY JUDGE BENNETT:
It’s really not material Mr. Aymond, I’m going to ask the jury to disregard what he said about how much Mr. Aymond is going to get, he doesn’t know that and why don’t we get to the point of the case.
BY MR. AYMOND:
If I may Your Honor if Mr. Boatner’s objection would sustain ...
BY JUDGE BENNETT:
Yes I sustain the objection and I’m going to tell you that apparently he doesn’t know ... he knows that he’s in court and he knows that he had to come to court because he is a defendant in this case but apparently he does not know the court orders, subpoenas, and so forth and you may ask him that ...
BY MR. AYMOND:
Okay, but he is the Chief of Police for the Town of Bunkie; he is a law enforcement officer ...
BY JUDGE:
Mr. Aymond, I’m not going to argue with you; I’m going to sustain the objection.
BY MR. BOATNER:
Your Honor in the essence of time I’m going to stipulate that I as attorney for the defendants issued the subpoena.
BY THE JUDGE:
Alright.
BY MR. AYMOND:
Also for the record, Your Honor, if I may, I’m not trying to be rude, I would like for it to be *1355 perfectly clear that neither me nor Mr. Townsend is suing Officer Condella for anything.
BY THE JUDGE:
We understand that.”

. The word “dockies” referred to is spelled as it appears in the transcript of the record.