427 So.2d 551 (1983)
CONCRETE PIPE PRODUCTS COMPANY, INC., Plaintiff-Appellee,
v.
Edwin Augustus BELL and Emily Bell, Defendants-Appellants.
No. 82-535.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
Rehearings Denied March 22, 1983.
*552 Collings & Collings, R. William Collings, Lake Charles, for defendants-appellants.
Leithead, Scott, Boudreau, Savoy, Myrick & Richard, Everett R. Scott, Jr., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, FORET and DOUCET, JJ.
DOMENGEAUX, Judge.
This suit was filed by Concrete Pipe Products Company, Inc. against Edwin Augustus Bell and his wife, Emily Bell, seeking to rescind a sale of land secured by vendor's lien and to enforce a counter letter executed simultaneously with the act of sale. The plaintiff also sought to recover damages, including attorney's fees, for the defendants' failure to comply with the terms of the counter letter.
The facts of this case are as follows:
On September 9, 1981, the Bells sold to Concrete Pipe Products Company, Inc. 9.1 acres of land situated in Calcasieu Parish, Louisiana, by an act of sale secured by a vendor's lien and mortgage. The sale was made for a consideration in the sum of $203,000.00 of which the plaintiff paid $103,000.00 in cash and furnished a promissory note for the balance in the amount of $100,000.00, due on or before January 4, 1982, with interest at the rate of 16%, which note was secured by a special mortgage on the property sold.
Simultaneously with the act of sale, the parties executed a counter letter, also dated September 9, 1981. It provided that:
"An additional cause and consideration for this sale and purchasenot recited or conditioned in the deed, but of the essence of this transactionis the warranty and guarantee of Bell that the property acquired by Concrete Pipe Products Co., Inc. is presently unclassified and will remain zoned for Concrete Pipe Products Co., Inc.'s intended use."
The counter letter further stated:
"2) Bell shall, at Concrete Pipe Products Co., Inc.'s option, and promptly after written demand, repurchase this property from Concrete Pipe Products Co., Inc. at any time within two (2) years after this date, in the event this property be rezoned by any lawful regulatory authority in such manner as to prevent, restrict or inhibit the use of this property by Concrete Pipe Products Co., Inc. for a concrete pipe or ready-mix plant, or a comparable type facility to accommodate Concrete Pipe Products Co., Inc.'s similar and incidental operations. Should such rezoning or use restriction occur within this two (2) year term, and Concrete Pipe Products Co., Inc. exercise its option for Bell to repurchase this property, the purchase price shall be the same purchase price (i.e., $203,000.00)."
The counter letter makes no provision for repayment of interest and attorney's fees by the Bells.
The evidence indicates that Concrete Pipe Products entered into this sale under the assumption that this property was zoned unclassified at the time that the act was executed. The Bells also were under the impression that the land was zoned in such a way, due to information provided by the plaintiff and from an investigation conducted by a realtor.
However, the information obtained by Concrete Pipe Products and the Bells concerning the unclassified nature of the property was in fact erroneous. The property was actually zoned as R-1, or Residential *553 Only, at the time of the sale. It remained zoned residential thereafter as well. Such zoning prevented Concrete Pipe Products from using this property for a concrete pipe or ready-mix plant, or comparable type facility to accommodate their similar and incidental operations.
Pursuant to the purchase, the plaintiff endeavored to install a driveway and foundations for a concrete batch plant on the property a little over one month after the sale. However, it was advised by the Office of the District Attorney that it was violating the law in commencing such constructions on residential property, and work was stopped on October 19, 1981, just a day or so after it had been commenced.
Concrete Pipe Products made a formal demand to the Bells on December 1, 1981, to repurchase the property pursuant to the terms specified in the counter letter. After the Bells refused to comply, the plaintiff filed suit on January 14, 1982.
The trial court rendered judgment for the plaintiff, ordering specific performance of the defendants' obligation to repurchase the 9.1 acres of property from Concrete Pipe Products pursuant to the terms of the counter letter. The judge ordered the $103,000.00 tendered by Concrete Pipe Products in the initial sale to be paid back with judicial interest as of the date of judicial demand, January 14, 1982, and also called for the Bells to return the $100,000.00 promissory note marked paid. The plaintiff was granted damages of $4,704.00 plus judicial interest to compensate for the defendants' intentional bad faith breach of the terms of the counter letter. However, the judge refused to allow the plaintiff to recover attorney's fees.
The Bells suspensively appealed the above judgment. Concrete Pipe Products answered the appeal, seeking an increase in the amount of damages it was awarded from $4,704.00 to $10,405.15, plus interest at the rate of 16% from September 9, 1981, until paid. It further sought to have the rate of interest on the $103,000.00 due to be reimbursed to it increased from legal interest to 16% interest payable from the date of the original act of sale and counter letter, September 9, 1981. In addition, it asked to recover attorney's fees at a rate of 20%, as well as damages for frivolous appeal in the amount of $1,500.00.
The defendants aver that the trial court erred in determining that the terms of the counter letter had been breached and that the plaintiff was entitled to specific performance. On the contrary, they claim that the repurchase provisions of the counter letter are ambiguous and that they should be given a reasonable time to bring a petition to have the property rezoned for industrial use.
We agree with the defendants that the trial court was mistaken in ordering specific performance of the repurchase provisions of the counter letter. However, the reason that we reach this conclusion is not that the wording of the counter letter is ambiguous, but that the section is inapplicable to the case at hand. It only forces the Bells to repurchase the 9.1 acres of land "... in the event this property be rezoned by any lawful regulatory authority ..." in such a way that it cannot accommodate Concrete Pipe Products' intended uses. Clearly, this property was never "rezoned" after September 9, 1981; conversely, it had been zoned residential for a long time prior to the sale and remained zoned in such a way thereafter.
However, the defendants are still liable to the plaintiff under the terms of the counter letter. The Bells warranted that "... the property acquired by Concrete Pipe Products Company, Inc. is presently unclassified and will remain zoned for Concrete Pipe Products Company, Inc. intended use ..." The previous residential zoning of the land constituted a breach of this warranty by the Bells.
We are of the opinion that this warranty actually constituted a resolutory condition to the formation of the contract. The sale was clearly designed to take effect immediately, but was subject to being defeated at any time that it was determined that the property was not zoned for Concrete *554 Pipe Products intended use. The condition was accomplished when the company was ordered to cease building operations on the property.
The accomplishment of a resolutory condition operates the revocation of the obligation, placing matters in the same state as though the obligation had not existed. The creditor is obliged in such circumstances to restore what he has received. La.C.C. Article 2045.
In this case, the plaintiff was granted specific performance of the defendant's obligation to repurchase the land in dispute, pursuant to the provisions of the counter letter. We have already determined that such provisions are inapplicable, but we will allow the original act of sale to be dissolved pursuant to the breach of the warranty made by the Bells in the counter letter.
The plaintiff is entitled to recover the $4,704.00 in expenses which the trial court determined were reasonably contemplated by the parties at the time they entered into the contract of sale and counter letter, with legal interest thereon. Furthermore, it is entitled to reimbursement of the $103,000.00 paid in cash to the defendants, but is limited to recovery of legal interest only upon such amount as of the date of judicial demand, January 14, 1982. The plaintiff is not allowed to recover interest on such funds at the 16% rate specified in the $100,000.00 promissory note given in partial payment of the price of the property in dispute. No provision for repayment of interest on the $103,000.00 cash downpayment in the event of a breach of warranty was included in the contract of sale or the counter letter, thus only judicial interest is allowable.
The plaintiff in its answer seeks to recover attorney's fees as an item of damages. However, as a general rule attorney's fees are not allowed a successful litigant in Louisiana except where authorized by statute or by contract. Rutherford v. Impson, 366 So.2d 944 (La.App. 1st Cir. 1979), writ denied 369 So.2d 140 (La.1979). Furthermore, an action for breach of contract does not fall within one of the limited exceptions to this rule, since the parties had an opportunity to stipulate in the contract that the attorney's fees would be due in the event that the contract was breached. Rutherford, supra. Therefore, the trial judge properly denied recovery of attorney's fees to the plaintiff, since neither the contract of sale nor the counter letter made provisions for such.
Plaintiff finally argues that it is entitled to recover $1,500.00 as damages for frivolous appeal. In Louisiana, damages for frivolous appeal are not allowable unless it is obvious that the appeal was taken solely for the purpose of delay or that counsel is not sincere in view of that law which he advocates. L. Frank & Company, Inc. v. Devillier's Foodliner, Inc., 365 So.2d 501 (La.App. 4th Cir.1978); La.C.C.P. Article 2164.
We feel that the defendant's appeal in this case meets neither of the above delineated criteria justifying damages for frivolous appeal. Plaintiff's request in this regard is thereby denied.
For the above and foregoing reasons, it is Ordered, Adjudged, and Decreed that the judgment of the trial court be recast as follows:
(1) Granting and ordering the dissolution of the contract of sale of immovable property between Edwin Augustus Bell and Emily Bell, and Concrete Pipe Products Company, Inc., entered into September 9, 1981, in the full price and sum of $203,000.00, ordering the Bells to reimburse to the plaintiff the $103,000.00 cash payment with legal interest thereon from the date of judicial demand until paid, and to return marked paid the $100,000.00 promissory note dated September 9, 1981, given by the plaintiff then in partial payment of the purchase price of the disputed property and marked "Ne Varietur" with the vendor's lien of this property recorded Clerk's File Number 1676534 in the Mortgage and Conveyance Records of Calcasieu Parish, Louisiana, within thirty (30) days following the day this judgment becomes final. Upon receipt of the amounts to be reimbursed by Edwin and Emily Bell, Concrete Pipe Products, Inc. *555 shall cause the vendor's lien recorded Clerk's File Number 1676534 and duly recorded on September 10, 1981, in the Mortgage and Conveyance Records of Calcasieu Parish, Louisiana, to be cancelled by delivering to the Clerk the note paraphed "Ne Varietur" and marked paid pursuant to this judgment, whereby title to the disputed property shall then, and only then, revert and be vested in Edwin Augustus Bell and Emily Bell.
(2) Ordering Edwin and Emily Bell to pay damages to Concrete Pipe Products Company, Inc. in the amount of $4,704.00 with legal interest thereon from the date of judicial demand until paid.
(3) Ordering that upon the default or failure of the defendants to reimburse those funds herein described, including the return of the $100,000.00 promissory note marked paid, pursuant to and strictly within the time stipulated in this judgment, this judgment shall automatically, ipso facto, become executory in the form and substance of a money judgment for the sum of $103,000.00, with interest and costs.
All costs, at trial and on appeal are assessed against defendants, Edwin and Emily Bell.
JUDGMENT RECAST AND RENDERED.