466 So.2d 1381 (1985)
Shelton DUBOIS, Plaintiff-Appellee,
v.
STATE of Louisiana Through DEPARTMENT OF PUBLIC SAFETY, et al., Defendant-Appellant.
No. 84-319.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1985.
*1383 W. Thomas Angers, Lafayette, for defendant-appellant.
J.N. Prather, Lafayette, for plaintiff-appellee.
George W. McHugh, Jr., St. Martinville, for defendant-appellee.
Before FORET, STOKER, and KNOLL, JJ.
KNOLL, Judge.
This is a consolidated case. In the main demand the State of Louisiana, through the Department of Public Safety (State) appeals a judgment ordering it to pay Shelton Dubois (Dubois) $20,500 damages for causing the death of three rodeo bulls who were impounded by the State Police Livestock Patrol in Vermilion Parish. The State argues two assignments of error: (1) the trial court was manifestly erroneous in its findings of fact and its determination of the weight and credibility of witnesses; and (2) the trial court erred in admitting the testimony of Eddie Haymon, a former employee of the Louisiana Livestock Patrol. Dubois answered the appeal seeking: (1) an increase in the trial court's damage award; and (2) damages and attorney's fees for a frivolous appeal. We amend and affirm the judgment.
In the incidental demand the State appeals the granting of Dubois's motion for summary judgment dismissing its reconventional demand against Dubois for malicious prosecution, and special damages incurred by the Louisiana Stock Patrol in its enforcement of the stock laws against Dubois. The sole issue presented by the State on appeal of this judgment is whether the trial court erred in granting Dubois's motion for summary judgment. We pretermit discussion of the State's argument, and dismiss its reconventional demand for failure to state a cause of action.

DETERMINATION OF MANIFEST ERROR
The State contends that the trial court was clearly wrong in holding: that the officers of the Livestock Patrol did not need a four-wheel drive truck to pull Dubois's bulls; that the officers injured the *1384 bulls when they pulled them with the truck; and that these injuries resulted in the subsequent death of the bulls.
In its well-reasoned written opinion, which we adopt, the trial court stated:
"[O]fficers of the State Police Livestock Patrol are alleged to have acted negligently in rounding up the plaintiff's bulls, and that such negligence resulted in the deaths of the bulls.
The Court believes that it is called upon to answer a fairly simple question in this case, that is, `Did the officers handle the capture of the bulls in a negligent fashion, and if so, was this the cause of the bulls' death?'
It is acknowledged that the State Police Livestock Patrol has authority to apprehend and impound roaming livestock. La.R.S. 3:3004. In fact, the officers may use whatever reasonable means are necessary to carry out the mandates of this law. However, it can not be doubted that the officers do not have the right to either willfully or negligently carry out their duties in such a way as to, unreasonably under the circumstances, cause injury to the stock they apprehend. (Although not relied upon in rendering the decision, the Court wishes to state for the record that the evidence indicates that the animals were upon privately owned land when the capture procedure began, not upon public roads.)
The operative facts, as indicated by the evidence, appear to this Court to be as follows: On November 19, 1981, members of the State Police Livestock Patrol captured a number of animals belonging to the plaintiff. Three of these animals were roped and then pulled by a pick-up truck to the location of the hauling trailer. The remaining animals were captured and moved into the trailer without the use of the pick-up truck. The plaintiff retrieved the animals from impound that night. The next day, one of the bulls was found dead, and two other died within the next several days. The evidence tends to indicate that, more probable than not, the bulls which died, and for which the plaintiff is suing, were the animals which were pulled by the pick-up truck. It is abundantly clear to this Court that the use of the pick-up truck to pull these animals was unreasonable under the circumstances. There was no emergency existing at the time which would require that the capture be accomplished quickly. And, the fact that several other animals were captured and loaded into the trailer without the help of the truck indicates that the use of the truck was not necessary. The Court also finds of importance the fact that the Livestock Patrol does not provide its officers with a manual of standard operating procedures, by which the officers would be informed of effective yet safe methods of handling the situations with which they are confronted. Apparently, each situation is `played by ear' by the officers. The Court feels that the failure to provide a manual is a breach of the State's duty which also contributed to the unfortunate occurrence of this lawsuit.
The next question is, `Did this negligence cause the deaths of the bulls?' The testimony of the veterinarian, Dr. Roberson was convincing and uncontradicted. He indicated that pulling an animal with a rope around its neck is dangerous at any time. If too much pressure is exerted damage to the breathing mechanisms is virtually certain. He also testified that animals suffering such damage are likely to display symptoms much like those described by the plaintiff (and others) as suffered by the bulls before dying. In addition, death from this type of trauma is common, though it may not occur for several days following such an incident. All of this is in accord with the deaths of the bulls as testified to by the plaintiff. Thus, this Court finds that it is more probable than not that the negligent action of the officers in pulling the bulls with the truck, was a direct cause of the bulls' deaths."
The State argues that Dubois failed to prove the identity of the three rodeo bulls *1385 by a preponderance of the evidence. Specifically they allege that the bones which their veterinary pathologists examined could not have been those of the three bulls whose value Dubois was seeking to recover.
In this regard the trial court stated:
"[It] may be appropriate to point out that there is another question in regards to the identity of these skulls [the skulls of the three bulls]. That question is, `Are the skulls the same remains as those turned over to the State by the plaintiff many months before the trial?' The State maintained possession of three skulls and certain other remains for an extended period of time, returning the skulls on or near the day of trial. The other remains were not returned, and the State could not show with certainty what had become of those items. Nor could the State show with certainty what had happened to and with the skulls from the time it obtained custody of them. Clearly, the normal procedures for proving identity and authenticity of evidence were not followed. Thus, ... [the State] must admit that there may be a doubt as to whether the skulls it returned are actually the same skulls given to it by the plaintiff."
It is a fundamental law of evidence that an article or substance which is introduced as demonstrative evidence, or to which a witness is asked to testify, must be sufficiently identified as the one involved in the occurrence in question. The foundation must be laid which connects the specimen with its source, show that it was properly taken by an authorized person, properly labeled and preserved, properly transported for analysis, and properly tested. Pearce v. Gunter, 238 So.2d 534 (La.App. 3rd Cir.1970), writ not considered, 239 So.2d 543.
The State picked up the skeletal remains of the three bulls from Dubois's property on August 26, 1982. At a pre-trial conference in November 1982 the remains were to be returned to Dubois within two weeks. When the remains were not voluntarily returned, the district court ordered the State on July 29, 1983, to return the remains to the custody of the Vermilion Parish Sheriff's Office. Some of the bones were returned but on September 9, 1983, Dubois was forced to file an additional rule nisi because the State had not returned all of the skeletal remains it had taken for testing. Dr. Theron G. Snider, III, the State's expert veterinarian pathologist, testified that he and many other persons had access to the remains. Accordingly, as a result of the mishandling of the chain of custody of the evidence, the State cannot now raise the issue of the sufficiency of evidence regarding the identity of the three bulls. There certainly was legally sufficient evidence to support Dubois's claim that the three bulls pulled by the truck were the same ones who subsequently died. The trial court's determination of this issue will not be disturbed.
There were contradictory facts concerning the negligent acts of the State, whether the three bulls were injured as a result of the Livestock Patrol's roping and pulling, whether the roping and pulling of the bulls caused the death of the animals, and whether Dubois was contributorily negligent in causing the death of the bulls.
The trial court's resolution of contradictory factual findings should not be disturbed unless they are clearly wrong. Zone v. Town of Bunkie, 407 So.2d 1351 (La.App. 3rd Cir.1981). Causation is a question of fact and in the absence of manifest error the trial court's findings should not be disturbed. Belmon v. St. Frances Cabrini Hosp., 427 So.2d 541 (La.App. 3rd Cir.1983). Contributory negligence is a question of fact, and its determination by the trier-of-fact will not be disturbed unless clearly wrong. Soileau v. South Cent. Bell Tel. Co., 406 So.2d 182 (La.1981). We find no manifest error in the trial court's determination that the State negligently roped and pulled Dubois's three bulls, that this negligence was the cause-in-fact of the bulls' deaths, and that Dubois's actions did not contribute to the deaths of the three bulls.

*1386 EVIDENTIARY EXCLUSIONS
The State contends that the trial court should have permitted it to introduce Eddie Haymon's deposition for impeachment purposes because Haymon, a former employee of the stock patrol, was not permitted to answer the State's questions of whether he had ever been charged with a crime. In the alternative the State further argues that the trial court should have excluded Haymon's trial testimony because he refused to answer the State's earlier questions in a deposition during discovery.
LSA-R.S. 15:495 permits a cross-examiner in a criminal trial to question a witness about prior convictions to impeach his credibility. Although no corresponding statute governs impeachment of a witness in civil cases, the weight of this state's jurisprudence indicates that this method of impeachment should extend to civil trials. Sikes v. McLean Trucking Co., 383 So.2d 111 (La.App. 3rd Cir.1980).
The State only propounded the question to Haymon of whether he had ever before been charged with a crime. This question was correctly excluded by the trial court and the jurisprudence clearly supports that exclusion. We note further that Dubois's attorney asked Haymon if he had ever been convicted of a crime, and Haymon responded negatively.
Furthermore, Haymon's testimony at trial was not excludable because of his earlier refusal to answer the State's questions in a deposition taken during the discovery phase of this case. The sanction for a deponent's failure to answer questions propounded is to seek an order from the trial court compelling discovery. LSA-C. C.P. Art. 1469. There was no evidence that the State sought such an order, and clearly it cannot be heard at trial on this issue. We therefore find that the State abandoned any objection it had to Haymon's refusal to answer questions at a pre-trial deposition.
The final evidentiary objection raised by the State is that the trial court erred in refusing to admit into evidence two incident reports detailing Haymon's alleged infractions of stock patrolmen's rules.
Evidence must have some probative value and be reasonably connected to the transaction in question. Associates Financial Services Company, Inc. v. Ryan, 382 So.2d 215 (La.App. 3rd Cir.1980). In assessing the relevancy of evidence the trial court is granted a great deal of discretion. State In Interest of Miles, 441 So.2d 61 (La.App. 3rd Cir.1983).
We have reviewed the proffered evidence, and find that the trial court was eminently correct in its conclusion that the incident reports were irrelevant.

DAMAGES
Dubois contends the damages awarded for the death of his bulls is inadequate and asks for an increase to $70,000. The State argues the trial court erred in its acceptance of Clement Ziebert as an expert for Dubois in establishing damages, and on basing its damage award in part on the testimony of other experts who were related to Dubois.
The appellate review of damage awards is limited to a determination of whether the trial court abused its great discretion. Anderson v. Welding Testing Laboratory, Inc., 304 So.2d 351 (La.1974). "The question is not whether a different award might have been more appropriate, but whether the award of the trial court can be reasonably supported by the evidence and justifiable inferences from the evidence before it." Bitoun v. Landry, 302 So.2d 278 (La.1974).
The State attacks the qualifications and alleged bias of Dubois's experts. The weight afforded an expert's testimony is largely dependent on his qualifications and the facts on which his opinion is based. Middle Tennessee Council, Inc., Boy Scouts of America v. Ford, 274 So.2d 173 (La.1973). The trial judge has considerable discretion, which should not be disturbed absent manifest error, in accepting or rejecting expert testimony. Emond v. Tyler Building and Const. Co., Inc., 438 So.2d 681 (La.App. 2d Cir.1983).
*1387 The trial judge did not err in basing its award on the expert testimony Dubois presented. The trial court acknowledged that it would weigh the effect of any familial relationship the expert witnesses had to Dubois. After thoroughly examining the record, we find that their testimony showed significant familiarity with the value of rodeo stock, and particular knowledge of the three rodeo bulls Dubois lost. The use of this evidence was properly allowed.
In the trial court Dubois sought damages for the value of the three bulls as well as loss of future income which the bulls would have provided. The trial court rejected Dubois's claim for future revenues, and awarded $12,500 for the bull, Mohammed Ali, $6,000 for the bull, # 99, and $2,000 for a third unnamed bull.
In his answer to the appeal Dubois reurges his claim for loss of profits. The allowance of loss of profits as an element of damages is more liberal in actions purely in tort, as opposed to actions for breach of contract. F & F Transfer, Inc. v. Tardo, 425 So.2d 874 (La.App. 4th Cir. 1983). The loss of profits is recoverable if it is proven with reasonable certainty, i.e., there is proof that the loss is more probable than not. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971); Mire v. Timmons, 155 So.2d 265 (La.App. 2d Cir. 1963), writ denied, 244 La. 1024, 156 So.2d 227. Mere estimates of loss will not support a claim for loss of profits. Shreveport Laundries v. Red Iron Drilling Co., 192 So. 895 (La.App. 2d Cir.1939). We find that the trial court was correct in rejecting Dubois's claim for loss of profits because no credible evidence was produced to substantiate this claim with any certainty.
The evidence established that the riding of bucking bulls is the largest drawing card at rodeos. Two of Dubois's bulls were exceptional rodeo performers and the third was just breaking into the rodeo circuit. However, after reviewing the expert witnesses' valuations of the individual bulls, we can not say that the trial court's award of damages is manifestly erroneous; accordingly, we will not disturb its determination.

FRIVOLOUS APPEAL
Dubois answered the State's appeal in the main demand asking for damages under LSA-C.C.P. Art. 2164 for a frivolous appeal. Damages for a frivolous appeal are not allowable unless it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious. Concrete Pipe Products Co., Inc. v. Bell, 427 So.2d 551 (La.App. 3rd Cir.1983), writ denied, 433 So.2d 1052; Parker v. Interstate Life & Accident Insurance Co., 248 La. 449, 179 So.2d 634 (1965). We find that the State's appeal was taken neither for the purpose of delay nor with an insincerity in its view of the law advocated. Although we do not find the State's arguments meritorious, Dubois's request for damages for a frivolous appeal is denied.
The trial court omitted the award of interest. We may correct a clerical error in a trial court judgment. LSA-C.C.P. Art. 2164; Simon v. Ford Motor Company, 282 So.2d 126 (La.1973) (on rehearing). Accordingly, we amend the trial court judgment to award legal interest from the date of judicial demand until paid.

DISMISSAL OF RECONVENTIONAL DEMAND
The State argues that the trial court erred in dismissing its reconventional demand for malicious prosecution and damages. We affirm the dismissal of the State's reconventional demand for the reason that it states no cause of action.
An appellate court may, on its own motion, notice the failure of a petition to state a cause of action. LSA-C.C.P. Art. 927; Jones v. Louisiana Dept. of Public Safety, Office of Motor Vehicles, 432 So.2d 1185 (La.App. 3rd Cir.1983).
Termination of the civil proceedings which are contended to have been *1388 maliciously prosecuted is an essential element for a successful action for malicious prosecution. Jones v. Soileau, 448 So.2d 1268 (La.1984); Weldon v. Republic Bank, 414 So.2d 1361 (La.App. 2d Cir.1982); Hibernia Nat. Bank of New Orleans v. Bolleter, 390 So.2d 842 (La.1980) (on rehearing); Parks v. Winnfield Life Insurance Company, 336 So.2d 1021 (La.App. 3rd Cir. 1976), writ denied, 339 So.2d 351; Williams v. Templet Shipyard, Inc., 278 So.2d 895 (La.App. 1st Cir.1973). The State's reconventional demand is void of any allegation that any civil proceeding terminated in its favor. Therefore, we note ex proprio motu the State's failure to state a cause of action for malicious prosecution.
The State further asserts that its petition states a cause of action for the recovery of the expenses incurred by the Louisiana Stock Patrol in its enforcement of the stock laws against Dubois. We disagree.
LSA-R.S. 3:2804 establishes the only punishment which the State may exact from Dubois for any violation of LSA-R.S. 3:2803, namely, payment to the impoundment officer of a fee of ten dollars per head of livestock, the payment for feeding and caring for the livestock at the rate of two dollars per day, and the cost of any veterinary expenses incurred. The statute prescribes the State's cause of action for the violation of the stock laws, and, unless authorized by the legislature, we will not extend that statute to provide for the collection of funds expended by the State in the performance of its ministerial duties. The record affirmatively establishes that Dubois paid the impoundment fees levied against him at the time he reclaimed his cattle.
Under the allegations of its petition, the law and jurisprudence afford the State no remedy as prayed; therefore, the State has failed to state a cause of action against Dubois in its reconventional demand.

DECREE
For the foregoing reasons we amend and affirm the judgment of the trial court in the main demand in favor of Shelton Dubois and against the State of Louisiana, through the Department of Public Safety in the amount of $20,500, and award legal interest on said sum from date of judicial demand until paid. We affirm the judgment of the trial court in the incidental action dismissing the State's reconventional demand against Shelton Dubois. All costs of this appeal are assessed to the appellant, the State of Louisiana, through the Department of Public Safety.
AFFIRMED AS AMENDED.