525 So.2d 106 (1988)
Dannie A. PAYNE, Plaintiff-Appellee,
v.
COUNTRY PRIDE FOODS, LTD., et al., Defendants-Appellants.
No. 87-68.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1988.
*107 C.R. Whitehead, Jr., Natchitoches, for plaintiff-appellee.
Watson, Murchison, Crews, Arthur & Corkern, R. Raymond Arthur, Natchitoches, for defendants-appellants.
Before DOMENGEAUX and LABORDE, JJ., and CULPEPPER [*], J. Pro Tem.
DOMENGEAUX, Judge.
Dannie Andrew Payne commenced these proceedings to recover worker's compensation benefits for an injury he suffered during the course and scope of his employment. Payne named as defendants: (1) Country Pride Foods, Ltd. (Country Pride), his employer at the time of the accident; and (2) The Travelers Insurance Company (Travelers), Country Pride's worker's compensation insurance carrier.
On December 8, 1983, Payne injured his right thumb while changing the blades on a vent machine at his employer's chicken processing plant in Natchitoches, Louisiana. Payne underwent numerous surgical procedures to repair the damage, but has suffered a permanent decreased range of motion and loss of strength. The claimant's doctor, Dr. W. Harold Brown, assessed his disability as a forty-five percent loss of ability of the right thumb and a fifteen percent loss of ability of the right hand.
The claimant received worker's compensation benefits during the period of his absence from work. Those benefits are therefore not the subject of this suit.
Payne returned to work at Country Pride on May 17, 1985. Country Pride reemployed him at the same pay scale, provided him with approximately the same number of hours per week, including overtime, and assigned him to perform essentially the same duties.
On June 5, 1985, less than one month after his return to Country Pride, Payne was observed disposing of chicken necks in a manner in violation of company policy. The chicken necks in question had fallen to the floor and could not be used for human consumption. Payne, instead of collecting the necks for processing into pet food, attempted to dispose of them by putting them down a disposal drain.
Payne, upon being observed, was instructed to go to one of his supervisors' offices and was informed upon his arrival that his action violated company policy. The supervisor further advised Payne that he would receive a written reprimand. Payne was instructed to sign the reprimand, but he refused to do so and became very defensive. He then, in an arrogant tone, challenged his superiors to fire him and walked out of the office. Subsequent to being paged, Payne returned to the supervisor's office, again became very defensive and then left, quitting his job.
The claimant's suit in the instant proceedings seeks supplemental earnings benefits. He contends he is entitled to receive SEB payments because of the injury to his thumb.
La.R.S. 23:1221 (1950) (amended 1968, 1975 and 1983) as in effect on December 8, 1983, the date of the claimant's injury, provides *108 the guidelines by which entitlement to supplemental earnings benefits is determined. R.S. 23:1221 provides, in part:
Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(3) Supplemental earnings benefits.
(a) For injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury, supplemental earnings benefits equal to seventy-four percent of the difference between ninety percent of the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee is customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparision to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
The Trial Court concluded that Payne's injury resulted in his inability to earn wages equal to ninety percent or more of the wages he was earning at the time he was injured. The Court awarded him supplemental earnings benefits at the rate of $99.23 per week for 525 weeks commencing July 6, 1985. Payne was additionally awarded legal interest on all past due payments from the date each payment became due and all costs of the trial proceedings.
Country Pride and Travelers suspensively appealed the District Court judgment. The appellants contend that the Trial Judge erred in three respects:
(1) The Trial Court erred in awarding supplemental earnings benefits to Payne because he quit his job for reasons unrelated to his injury and because at the time he quit he was working at the same pay scale, working approximately the same number of hours per week and performing essentially the same duties he performed prior to his injury;
(2) The Trial Court erred in relying on the testimony of the claimant's vocational expert, Richard H. Galloway, Ph.D., because the expert's opinion was based on incorrect, false and incomplete information; and
(3) In the alternative, the Trial Court erred in calculating the amount of weekly SEB payments and the maximum number of weeks in which the claimant is entitled to receive the payments.
The initial issue on appeal is whether supplemental earnings benefits are due a claimant who lacks the physical ability to earn at least ninety percent of the income he was earning prior to his injury, but, who quits working for his previous employer who had rehired him at the same pay scale, provided him with approximately the same number of hours, including overtime, and assigned him to perform essentially the same duties. This issue is complicated by the fact that the claimant's decision to terminate the employment relationship was entirely unrelated to his injury. Although the appellants dispute the extent of Payne's disability, the Trial Court concluded, and the evidence supports the determination, that Payne lacks the physical ability to earn at least ninety percent of his previous wages.
The appellants assume the position that because Payne was assigned to perform the same job, at the same pay scale, for the same number of hours per week, he failed to demonstrate any inability to earn wages equal to ninety percent of his preinjury wages. Country Pride and Travelers place great emphasis on the fact that Payne was not fired, but instead, chose to quit his job for reasons unrelated to his injury.
The appellee submits that, no matter the circumstances of his departure, the injury he sustained has placed him at a severe disadvantage in attempting to obtain employment and earn a living equivalent to his previous standard. The evidence at trial established that, despite Payne's good faith efforts, he has been unable to find employment because of the disabilities *109 which resulted from his injury. The evidence indicates that Payne's attempts to find employment have also been aggravated by the poor condition of the Natchitoches economy.
This issue presents us with an interesting and difficult dilemma. We do not wish, on one hand, to deny an injured worker the right to refuse to work for his former employer or to terminate his employment relationship at the risk of losing his right to supplemental earnings benefits. This could place a worker in the tenuous position of working under unbearable or demeaning circumstances should an unscrupulous employer desire to eliminate SEB payments by coercing the worker into refusing the employer's offer of employment or coercing him into quitting subsequent to returning to work. We specifically note that these are not the circumstances of the instant case. On the other hand, we do not wish to permit a worker to hold his employer hostage by performing subquality work, when he is capable of better, with the knowledge that the employer will hesitate to release him aware that he will be obligated to pay supplemental earnings benefits, in addition to having to replace the employee. We also note that Payne's performance at Country Pride was not questioned with the single exception of the disposal of company product which led to this suit.
Our review of Section 1221 reveals that the Legislature has struck a balance between the competing needs of employers and employees. The right of the employee to decline or terminate employment appears to be balanced against the amount of supplemental earnings benefits to which he may be entitled. See generally, 13 W. Malone & H. Johnson, Louisiana Civil Law Treatise § 275 (1980).
Section 1221 consistently refers to the ability or inability of the claimant to earn wages of a particular level. The threshold prerequisite to the recovery of supplemental earnings benefits, as set forth in subparagraph (3)(a) is that the employee's injury result in his "inability to earn wages equal to ninety percent or more of the wages he was earning at the time of the injury." Id. (emphasis added). Subparagraph (3)(a) further provides that the amount of SEB payments to which a claimant may be entitled is dependent upon the "average monthly wages earned or average monthly wages the employee is able to earn." Id. (emphasis added). Subparagraphs (3)(b) and (c), further clarifying the question of the amount of benefits to which a claimant may be entitled, again make particular reference to the wages the claimant is "able" or "physically able" to earn.
We therefore believe, as stated by the trial judge, that "[t]he heart of 1221(3)(a) is the ability or inability of an employee to earn wages equal to or exceeding ninety percent of the wages he was earning at the time of the injury." We believe that this compensation scheme gives an employee the freedom to accept or decline employment as he or she should so choose, while at the same time determining the amount of supplemental earnings benefits the employer or insurer will be obligated to pay by referencing the claimant's ability to earn wages. We find no authority for the proposition that a claimant may not decline to work for his former employer, particularly when he demonstrates that he does not possess the physical ability to perform the tasks assigned.
Subsubparagraph (3)(c)(i) is of particular importance to the instant case because it addresses the issue of the claimant who is not employed, engaged in any self-employment or earning wages commensurate with his abilities. This subsubparagraph provides that the claimant's wages, for the purposes of determining his eligibility for SEB payments, shall not be less than the sum he could earn for which he was physically able and (1) which was offered or tendered by his or any employer, or (2) which is proven available to the claimant in the employee's or employer's community or reasonable geographic region.
Although Payne was offered and accepted employment with Country Pride, we do not believe that the "offered or accepted" element of subsubparagraph (3)(c)(i) precludes his recovery. The emphasis *110 of subsubparagraph (3)(c)(i) is that the claimant was offered work which he was capable of performing. We believe, as did the Trial Judge, that although Payne was offered and accepted his previous position with Country Pride, he was not physically able to perform the work. The claimant's post injury work performance, as stated by the Trial Judge, was "inferior in both quantity and quality to his preaccident performance." We further believe as did the lower court, that Payne was returned to his previous position and wage scale "as an act of benevolence by a responsible employer."
At oral argument, the appellants maintained that the case of Miller v. Great Southern Oil and Gas Co., Inc., 503 So.2d 679 (La.App. 3rd Cir.1987) supported their position. We have reviewed the Miller decision and believe it is readily distinguishable. The claimant in Miller suffered no physical or mental disability as a result of his work related injury. He was physically able to earn wages equal to or exceeding ninety percent of his preinjury wages and was only unemployed because of poor economic circumstances. The claimant in the instant case, however, is not unemployed solely because of economic circumstances. Payne's injuries, as we have previously stated, resulted in a forty-five percent loss of ability of the right thumb and a fifteen percent loss of ability of the right hand. Payne is entitled to SEB payments because he lacks the ability to earn wages comparable to his preinjury wages.
The second issue on appeal addresses the testimony of Richard H. Galloway, Ph.D., the claimant's vocational expert. Galloway testified, via his deposition, that Payne's injury, particularly because it was to his right thumb and he was right-handed, vocationally handicapped the claimant. The Trial Court concluded that Galloway's testimony substantiated "the common sense fact" that Payne did not have the ability to earn wages equal to or exceeding ninety percent of his preinjury wages.
Country Pride and Travelers contend on appeal that the Trial Court should not have considered Galloway's testimony, or, at most, should have accorded it very little weight. They maintain that his testimony was based on false, erroneous and incomplete information. The appellants premised their argument on the fact that Galloway's testimony was the result of a single consultation with the claimant during which he was hostile and misled the expert.
The jurisprudence indicates that the weight afforded an expert's testimony is dependent upon his qualifications and the facts on which his opinion is based. Middle Tennessee Council, Inc., Boy Scouts of America v. Ford, 274 So.2d 173 (La.1973); Dubois v. State, Department of Public Safety, 466 So.2d 1381 (La.App. 3rd Cir. 1985). Absent manifest error, the evaluations of a competent expert witness are not to be disturbed. Smith v. Lumbermen's Mutual Casualty Company, 414 So.2d 1281 (La.App. 3rd Cir.1982), writ denied, 417 So.2d 367 (La.1982); Faustina Pipe Line Company v. Hebert, 469 So.2d 483 (La.App. 3rd Cir.1985), writ denied, 474 So.2d 1295 (La.1985).
We have reviewed the deposition of Doctor Galloway and although we agree that the claimant was hostile and aspects of what Galloway was told were not true, we do not believe the Trial Judge was manifestly erroneous in accepting his testimony. Considerable aspects of Galloway's opinion were based on tests he conducted and observations he or the claimant's doctor, Dr. W. Harold Brown, made and not on the claimant's statements. Subsequent to a review of the Reasons For Judgment, in which the Trial Judge stated that his decision addressing Payne's disability was based on "common sense fact[s]" which were merely substantiated by the expert's conclusions, we cannot say the Trial Judge abused his broad discretion.
The final issue on appeal addresses the Trial Court's calculation of the amount of weekly SEB payments to which Payne is entitled and the Court's determination of the number of weeks in which he may receive the benefits. The Trial Court awarded Payne $99.23 per week for 525 weeks, commencing July 6, 1985. The appellants argue, in the alternative, that if Payne is entitled to supplemental earnings *111 benefits he is only entitled to $72.93 per week for 520 weeks.
The appellants set forth their calculation as follows:

 6.46 (hourly rate)
 ×40 (hours per week)
________
 258.40
 ×4.3 (per Statute)
_________
 1111.12
 1111.12
 × .90
 1000.01 (90% of average monthly wage)
 1000.01
 - 576.20*
_________
 423.81
 × .74
_________
 313.62 (74% of difference per Statute)
 ÷4.3
__________
 72.93 SUPPLEMENTAL EARNINGS BENEFITS

*This assumes the Trial Court used minimum wage of $3.35 per hour.

 3.35
 × 40
 _________
 134
 × 4.3
 _________
 576.20

They cite R.S. 23:1221(3)(d) as their authority for the fact that a claiment's right to supplemental earnings benefits may not exceed 520 weeks.
The appellee in his brief submits that the appellants are correct in both the amount and the number of weeks in which he may receive SEB payments. Subsequent to our review of the statute and the facts of this case, we conclude that the computations urged by the appellants are correct and modify the judgment accordingly.
For the above and foregoing reasons the judgment of the District Court in favor of Dannie Andrew Payne and against Country Pride Foods, Ltd. and The Travelers Insurance Company is modified to reduce the amount of weekly supplemental earnings benefits to $72.93 and to reduce the maximum period of Payne's entitlement to 520 weeks.
The judgment in all other respects is affirmed.
The costs of this appeal are assessed: seventy-five percent to Country Pride Foods, Ltd. and The Travelers Insurance Company and twenty-five percent to Dannie Andrew Payne.
AFFIRMED, AS AMENDED.
NOTES
[*] Honorable William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.