543 So.2d 1032 (1989)
Michael Jerry CAMPBELL, Plaintiff-Appellee,
v.
LUKE CONSTRUCTION COMPANY Defendant-Appellant.
No. 87-1421.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
*1033 Edwards, Stefanski & Barousse, J. Michael Stefanski, Crowley, for plaintiff-appellee.
Preis, Kraft & Daigle, Gregory J. Laborde, Lafayette, for defendant-appellant.
Before FORET, DOUCET and YELVERTON, JJ.
DOUCET, Judge.
Defendant, Luke Construction Company, appeals from a judgment awarding to plaintiff, Michael Jerry Campbell, permanent total disability benefits under Louisiana Worker's Compensation Law for a back injury which occurred on August 26, 1980, during the course and scope of his employment by defendant. The judgment also awarded to plaintiff all medical expenses related to his back injury and ordered defendant to pay for any future surgery performed to correct his back injury. We affirm.

FACTS
We agree with the Supreme Court's statement of the facts of this case in Campbell v. Luke Construction Co., 465 So.2d 688 (La.1985) and adopt them as our own as follows:
"Campbell was hired by Luke Construction in August of 1980 as a roustabout. His duties included general labor around the work sites and lifting of heavy objects. On August 26, 1980, Campbell, age 23, was loading chains which weighed about one to two hundred pounds onto a truck when he felt a sharp pain in his back. Campbell had no prior history of lower back injury or pain. He reported the incident to his supervisor, who took him to see Dr. Howard Alleman who took x-rays and prescribed muscle relaxers and rest. He later referred Campbell to Dr. Fred Webre, an orthopedic *1034 surgeon. Dr. Webre saw Campbell three times and found that while his subjective complaints of back and right leg pain could suggest a herniated disc, there was no reason why he could not return to work nor any reason for further orthopedic treatment. Campbell next saw Dr. Alfred Harmon, a general practitioner, who diagnosed lumbosacral sprain and recommended physical therapy and use of a lumbosacral brace. After three visits, he referred Campbell to Dr. John Cobb, an orthopedic surgeon. Dr. Cobb diagnosed soft tissue injury. He conducted an electromyographic study and a myelogram, both of which yielded "normal" results.
In February of 1981, Campbell sought treatment from Dr. James Oates in Houston, Texas, a medical doctor with a specialty in physical medicine and rehabilitation. Dr. Oates conducted physical and electromyographic examinations and concluded that Campbell had sustained damage to the right and possibly the left nerve roots in his lower back which was most likely caused by a herniated disc. He stated that the negative results of the previous myelogram did not preclude his diagnosis. Dr. Oates referred Campbell to Dr. Harry Slade, a neurosurgeon.4 Dr. Slade hospitalized Campbell and performed a lumbar venogram which indicated defects consistent with a herniated disc at L4-5. The record further reflects that Campbell received physical therapy treatments about 24 times between October and November of 1980 and about 65 times between January and April of 1981.
The trial judge concluded that Campbell was disabled for a period of one year and awarded him compensation for twelve months together with medical expenses. Luke Construction satisfied the judgment. Thereafter, on July 28, 1982, Campbell filed a petition for modification of the judgment of compensation alleging that tests done since the December 8, 1981 judgment indicated that he was suffering from a herniated disc at L4-5 and that he was totally and permanently disabled and was therefore entitled to increased disability benefits and medical expenses. The trial judge found that Campbell failed to prove a disabling condition and dismissed the modification claim. The court of appeal affirmed."
In footnote 4 mentioned in the quote above, the Supreme Court stated:
"4. Dr. Slade's initial treatment and hospitalization of Campbell took place before the November 25, 1981 trial. No deposition of Dr. Slade was included in the exhibits of that proceeding."
The trial court judgment dismissing Campbell's modification claim was rendered on July 1, 1983. Campbell appealed, and this Court's decision affirming the trial court's judgment was rendered on July 25, 1984. Campbell then applied for a writ of certiorari, which was granted by the Supreme Court. Campbell v. Luke Construction Co., 462 So.2d 199 (La.1984).
On January 25, 1985, Campbell was sitting in his car which was stopped for a traffic signal at an intersection, when his car was struck from the rear by a tractor/trailer rig. Campbell filed suit for damages for injuries, including injuries to the lumbar region of his back, which he alleged resulted from the automobile accident. (The district Court later dismissed the suit with full prejudice to all rights of Campbell in a judgment rendered on September 17, 1987.)
The Supreme Court on April 1, 1985, without evidence of the above mentioned automobile accident before it, reversed the decisions of the trial court and this Court in Campbell's suit for modification of the original judgment awarding him compensation. In its reversal, the Supreme Court concluded "that Campbell proved by a preponderance of the evidence that his condition has changed and that he suffers from a disabling back injury." The Court held that the trial court was clearly wrong in finding that Campbell did not prove such a change of condition. Further, the Court remanded the case to this Court to determine the nature and extent of Campbell's disability and the amount of compensation to which he was entitled.
*1035 On remand, this Court found that there was insufficient evidence in the record, and remanded the case to the trial court with instructions to reopen the record for evidence of the nature and extent of Campbell's disability and the amount of compensation he was owed. Campbell v. Luke Construction Co., 474 So.2d 569 (La.App. 3rd Cir.1985).
After the consideration of additional evidence on remand, the trial court rendered judgment on March 25, 1987 finding Campbell to be totally and permanently disabled and therefore entitled to reinstatement of worker's compensation benefits from the date of termination at the rate of $113.33 per week. The trial court further found that Campbell was entitled to all medical expenses related to his lower back injury, and found that his neck injuries were not connected with his work-related injury of August 1980. Additionally, the trial court ordered the defendant to pay for any future surgery performed to correct his back injury. From this judgment defendant appealed, asserting four assignments of error.
Campbell answered defendant's appeal, asserting that it is a frivolous appeal and seeking as damages penalties and attorney's fees as provided by Louisiana Worker's Compensation Law.
ASSIGNMENT OF ERROR NO. 1
By this assignment of error defendant asserts that the trial court erred in finding Campbell permanently and totally disabled because the evidence in the record did not establish the existence of such a disability. Defendant specifically asserts that the Supreme Court's decision, finding that Campbell had proved a change in his condition, is erroneous based on medical evidence presented in the trial court on remand. Further, defendant contends that the trial court erred in believing it was bound by the Supreme Court's decision to find Campbell permanently and totally disabled.
The record reveals that Dr. Harry Slade, a neurosurgeon, performed a lumbar venogram on Campbell in November of 1981 which indicated defects consistent with a herniated disc at L4-5. In February of 1982, Dr. Slade hospitalized Campbell and conducted a myelogram. He opined that the myelogram showed a "constant filling defect" on the right side of L4-5 which was also consistent with a herniated disc. Dr. Slade testified that in February of 1981, he felt that Campbell's condition was disabling and that Campbell could not return to manual labor.
Dr. Slade examined Campbell again on October 20, 1986. He testified that Campbell's condition was different in 1986 from what it was in 1982, mainly because plaintiff had complaints of neck pain since the automobile accident in 1985. He stated that Campbell's back was "a little worse" than in 1981 or 1982 and that Campbell still needed medical treatment to correct his back condition. Further, he testified that the type of medical treatment Campbell now needs is the same as the treatment he needed in 1981. Dr. Slade testified that at the time he was deposed, on February 18, 1987, Campbell was disabled from performing any manual labor.
Dr. Salvador Henry LaRocca, an orthopedic surgeon, testified by deposition that he saw Campbell for the first time on January 13, 1986. Dr. LaRocca conducted examinations and diagnostic tests including x rays, a CT scan, a myelogram, and facet blocking of the lower three lumbar segments. Dr. LaRocca testified he found no evidence of disc herniation or nerve damage, but that there was clinical evidence of nerve irritation. He stated that the facet blocking was pathologic at L4-5. He further stated that the joint capsule at that level was irregular and enlarged, and that the swelling of the joint irritated nerves in Campbell's back. Dr. LaRocca opined that Campbell has a spinal stenosis and a degenerate arthritic joint at L4-5 and that the condition could be related to trauma. He stated that Campbell's history of some six years of pain is very consistent with degeneration of the joint or disc or both in Campbell's spine. He further stated that a degenerate arthritic joint can't develop in six or seven months, so that whatever is wrong with Campbell's back in 1986 was ongoing and *1036 predated any injury from the automobile accident in 1985. Dr. LaRocca opined that the pain in Campbell's back and legs is due to facet joint syndrome of longstanding duration at L4-5 and that this condition existed prior to Campbell's automobile accident in January of 1985. Dr. LaRocca testified that at the time he saw Campbell, he did not think Campbell could go back to doing manual labor. He further stated that as of the time of his deposition on January 9, 1987, Campbell was unemployable. He also stated that seven years of total disability from a lifting strain is not hard to accept.
Dr. John E. Cobb, an orthopedic surgeon, testified by deposition that he first examined Campbell on November 26, 1980, which was three months after Campbell's work-related accident. He stated that he initially thought Campbell had sustained a lifting injury which involved soft tissue, primarily the posterior supraspinal ligament and a facet joint. Dr. Cobb testified on September 30, 1981 that he was aware of no objective findings to substantiate Campbell's pain and that he could find no neurologic abnormality. However, Dr. Cobb stated that it was still possible for Campbell to have been suffering from some sort of nerve root irritation. He stated that Campbell could have a minimal disc protrusion, which would be causing the nerves to get irritated, swollen, and cause pain. He further stated that Campbell's nerve irritation and pain could come from an inflamed or swollen joint caused by a strained back. Dr. Cobb also testified that he thought it was possible that Campbell could be suffering from some sort of disc injury.
Dr. Cobb was also deposed on October 1, 1986, and testified that he saw Campbell on May 20, 1985. He stated that he examined Campbell and performed diagnostic tests including x rays, a myelogram, a CT scan, and a discogram. Dr. Cobb stated he found no evidence of abnormalities in the disc at the L4-5 level, but, because of Campbell's symptoms, he felt that there was some compression of nerves that was non-discogenic. He testified that Campbell had symptoms of neurocompression and that he felt that more extensive diagnostic work was needed. He further stated that he thought Campbell should be considered disabled until a definitive confirmation is made and definitive treatment is done. He also stated that he had no problem with Campbell's disability extending from the time of the January 25, 1985 automobile accident until the time he saw Campbell, but that he didn't know what Campbell's situation was before the accident. Dr. Cobb stated that he had referred Campbell to Dr. LaRocca.
From the medical testimony mentioned above, it is evident that all three of the physicians are of the opinion that Campbell is disabled, although their diagnoses differ somewhat. Dr. Slade believes that Campbell has a ruptured disc, while Dr. LaRocca believes that Campbell is suffering from facet joint syndrome from a degenerative arthritic joint. Dr. Cobb believes Campbell is suffering from nerve root irritation and conceded in his deposition of September 30, 1981, that it could be caused by an inflamed or swollen facet joint or possibly some sort of disc injury, while stating that he felt the cause was non-discogenic in his deposition of October 1, 1986. Additionally, all three predict that Campbell's condition will not improve without future treatment.
The testimony of Campbell and Ursala Payne, who has lived with Campbell since 1983, supports the trial court's finding that Campbell is permanently and totally disabled. Also, the testimony of Dr. Kate Lee concerning Campbell's consultations with her and treatment by her for his back complaints, lends additional support to the trial court's finding of disability. Thus, we find there is ample evidence in the record to support the trial court's finding of permanent and total disability.
Defendant asserts that the Supreme Court's decision, that Campbell had proved a change in his condition after his initial award of compensation, was in error, as revealed by evidence presented on remand. Defendant argues that since Dr. LaRocca and Dr. Cobb are both of the opinion that Campbell's condition is not related to a *1037 herniated disc, the Supreme Court's decision was wrong because it was based on the Court's "conclusion" that Campbell's back condition had developed into a herniated disc. The Court concluded no such thing. The Court stated that Dr. Slade "performed a lumbar venogram which indicated defects consistent with a herniated disc at L4-5," and that Dr. Slade "opined that the myelogram results showed a `constant filling defect' on the right side of L4-5, which correlated with the results and diagnosis he had obtained from the earlier lumbar venogram." The Court further stated:
"The results of the second myelogram, conducted by Dr. Slade, constitute objective evidence that Campbell's back condition has developed into a herniated disc. The findings of this diagnostic test support the conclusions of Dr. Slade and substantiated Campbell's subjective complaints of increased pain. The fact that Campbell continued to seek treatment for back pain on almost a monthly basis following the judgment of compensation further reinforces his claims."
The above-quoted language indicates that the Court merely concluded that Campbell had presented objective evidence which supported and was consistent with Dr. Slade's diagnosis and which substantiated Campbell's subjective complaints of increased pain by a preponderance of the evidence. This language does not reflect that the Court positively concluded that Campbell had a herniated disc, as defendant suggests. Rather, it shows that the Court concluded that Campbell had borne his burden of establishing that his condition had changed, i.e., his pain had increased.
Further, Dr. Slade, in a deposition conducted on February 18, 1987, testified that he was aware that Dr. LaRocca had diagnosed Campbell as having lumbar spinal stenosis and facet joint difficulty at L4-5. In relation to this, Dr. Slade stated, "The facet joints generally will give pain localized in the low back and not have the referred pain into the lower extremity unless they are so bad, that they are pressing on the nerve roots and in which case, probably the facet joint surgery would take care of that." He then stated, "I don't have any major disagreement with Dr. LaRocca." These statements show that Dr. Slade does not rule out Dr. LaRocca's diagnosis as to the cause of Campbell's pain and that either diagnosis supports Campbell's subjective complaints of pain and disability. Additionally, Dr. Cobb conceded that the nerve root irritation he diagnosed could be caused by either a swollen facet joint or some sort of disc injury. Thus, we find that the Supreme Court's decision that Campbell's condition had changed and that he suffered from a disabling back injury was not erroneous.
Defendant's assertion that the trial court erred in believing it was bound by the Supreme Court's decision to find Campbell permanently and totally disabled is without merit. The Supreme Court held only that Campbell proved a change in his condition and that he suffered from a disabling back injury. The Court never stated that Campbell was totally and permanently disabled. In fact, the Court remanded the case specifically to determine the nature and extent of Campbell's disability and the amount of compensation to which he is entitled. It is difficult to imagine how the trial court could believe it was bound by that judgment to find Campbell totally and permanently disabled and we cannot say that the trial court erroneously believed it was so bound.
Finally, defendant contends that medical evidence in the record on remand shows that Campbell received no medical treatment for his back injury during the time that this case was on appeal, and that he did not seek medical treatment until after the occurrence of the automobile accident on January 25, 1985. We find this contention to be without merit.
Campbell's suit for modification of his compensation award was dismissed on July 1, 1983, and Campbell then appealed. Campbell's automobile accident occurred on January 25, 1985. The record reveals that during the time period of just over 18 months between these two events, Campbell *1038 consulted with Dr. Kate Lee on twelve occasions with complaints of back pain or back and leg pain. On eight of those occasions, Dr. Lee prescribed medication for pain and/or muscle relaxants. During Campbell's hospitalization from June 19, 1984 through June 25, 1984, his back injury was treated with ultrasound therapy, physical therapy, and traction. Further, Dr. Lee stated that on May 17, 1984, she examined Campbell's back and there was tenderness in the lumbar region of his back. Dr. Lee also stated that she had examined Campbell's back previously, but had made no notes of it because Campbell had told her he was under Dr. Slade's care for his back injury.
Dr. Lee sometimes treated Campbell for other ailments during the same period of time, such as cold, sore throat, flu, and virus, while concurrently treating him for back pain. This fact, however, in no way supports defendant's contention that Campbell received no medical treatment for his back while the case was on appeal.
For the foregoing reasons we find no error in the trial court's finding that Campbell was permanently and totally disabled.
ASSIGNMENT OF ERROR NO. 2
By this assignment of error defendant asserts that "the trial court erred in awarding compensation benefits after January 25, 1985, based on the trial court's finding that Campbell aggravated his lower back condition in an automobile accident on that date."
The trial court, in its Reasons for Judgment, found that Campbell's pre-existing back injury was aggravated by the automobile accident of January 25, 1985. In its judgment, the trial court awarded Campbell all medical expenses related to his lower back injury and ordered defendant to pay for any future surgery performed to correct his back injury. Defendant contends that "these orders and findings are inconsistent, in that a finding of aggravation of an existing injury is by definition a superseding cause for those damages" which cannot be imposed upon defendant.
We do not find the "orders and findings" of the trial court to be inconsistent. As previously discussed, Dr. Slade felt Campbell was disabled when he examined Campbell after the work related injury of 1980. He testified that he found a slight difference in Campbell's lower back after the automobile accident of 1985 and that the automobile accident could have contributed to the difference, but he didn't know how much. However, Dr. Slade testified that the type of medical treatment Campbell now needs is the same as he needed in 1981 and 1982. Further, Dr. LaRocca testified that he thought Campbell's lower back condition was the result of a sprain which didn't heal and led to joint arthritic degeneration and chronic pain, and then it was aggravated again by the automobile accident. However, he also stated that the joint would take several years to degenerate to that condition, so that whatever was wrong with Campbell's back in 1986 was ongoing and predated any injury of 1985, and would have continued regardless of the 1985 accident.
The trial court had the benefit of a complete medical history of Campbell's condition. It was certainly aware of the fact that Campbell injured his neck and experienced some aggravation of his back injury in the automobile accident of January 25, 1985, but as the medical evidence indicated, Campbell was disabled because of his back injury before the automobile accident. Any aggravation was simply an aggravation of Campbell's pain, not a change in the etiology of that pain. The testimony of Dr. Slade and Dr. LaRocca indicates that whatever is wrong with Campbell's back after the automobile accident, is the same thing that was wrong with his back before the accident. Further, Dr. Slade stated he would have operated on Campbell as early as 1982. Dr. LaRocca stated that, more probably than not, Campbell had a painful degenerative joint in 1984 and that he generally starts to consider surgical treatment after about one year.
We find the cases cited by defendant unpersuasive and that the trial court correctly concluded that the treatment of Campbell's back by all physicians was related to his on-the-job accident of August *1039 26, 1980, so that the automobile accident in 1985 was not a superceding cause of Campbell's disability. As we construe it, the medical testimony ascribes the most probable cause of this trauma-resultant disability as Campbell's earlier accident of August 1980, when he was lifting chains onto a truck and sustained a painful low-back injury. We do not find persuasive the defendant's arguments to construe this testimony otherwise.
ASSIGNMENT OF ERROR NO. 3
By this assignment of error defendant asserts that the trial court erred in ordering defendant "to pay for any future surgery performed to correct his back surgery" inasmuch as medical evidence only indicates the need for additional diagnostic testing.
Defendant's assertion is inconsistent with the testimony of both Dr. Slade and Dr. LaRocca. Dr. Slade testified that he would have performed surgery as early as 1982. He also stated that Campbell needs the same treatment now as he did then. Dr. LaRocca testified that surgery would probably be needed in order to improve Campbell's condition. Naturally, both physicians would like to have the benefit of additional diagnostic testing prior to surgery. Nevertheless, a review of the testimony of these two physicians, as well as other medical evidence, suggests that due to Campbell's long history of problems with pain and suffering, the ultimate solution to his problems will be surgery. The need for such surgery is fairly attributable to Campbell's work related accident of August 1980.
The settled rule is that a worker's compensation claimant is not entitled to an award for future medical expenses, but the right to claim such expenses is always reserved to him, even though the defendant's liability for them arises only when they are incurred. LSA-R.S. 23:1203; Andersen v. Eagle Asbestos Co., 355 So.2d 1082 (La. App. 4th Cir.1978). The order to pay for any future surgery performed to correct plaintiff's back injury merely confirms plaintiff's right to claim the expenses as they become due. Since defendant is already responsible for medical expenses incurred in connection with the work-related injury, we perceive no prejudice to defendant by the wording of the trial court's judgment relating to their payment.
We find this assignment of error to be without merit.
ASSIGNMENT OF ERROR NO. 4
By this assignment of error defendant asserts that the trial court erred in failing to determine which medical bills were related to treatment of Campbell's back, and in "failing to distinguish between those due to the work related accident, and those due to the automobile accident."
The trial court awarded to Campbell all medical expenses related to his lower back injury. Thus, this amounts to an award of both past and future medical expenses related to the lower back injury. Defendant contends that the submitted expenses clearly show that portions of these expenses were in fact related to Campbell's neck injury from the January 25, 1985 automobile accident or to treatment of various other ailments. Defendant asserts that the trial court erred in failing to definitively rule on which of the submitted medical expenses were in fact related to Campbell's back condition.
From a review of the physicians' testimonies and the medical bills in the record, it is evident which medical expenses are related to Campbell's lower back injury and which are related to other concerns. We find that $11,663.49 of the submitted medical bills are related to Campbell's lower back injury. We deny Campbell's claim for interest and attorney's fees Campbell alleges are owed in connection with some of these bills because they are not proven.
Because it is evident from the record which expenses were related to Campbell's back injury, we find no error in the trial court's failure to definitively rule on which of the expenses were related to Campbell's back condition.
DAMAGES FOR FRIVOLOUS APPEAL
In his answer to defendant's appeal, Campbell alleges that the appeal is frivolous and seeks as damages penalties and *1040 attorney fees as provided by Louisiana Worker's Compensation Law.
In discussing damages for frivolous appeal in Pickering v. City of Baton Rouge, 442 So.2d 522 (La.App. 1st Cir.1983), the court stated:
"Under LSA-C.C.P. art. 2164, appellate courts have the authority to award such damages. However, appeals are favored under the law and damages for frivolous appeal will not be granted unless they are clearly due. Maxwell v. State, Dept. of Transp., Etc., 391 So.2d 1230 (La.App. 1st Cir.1980), writ denied, 394 So.2d 281 [La.1981]. Damages will be allowed only when there are no serious legal questions, when the appeal is taken solely for the purpose of delay, or when it is evident that appellant's counsel does not seriously believe in the position he advocates. Salmon v. Hodges, 398 So.2d 548 (La.App. 1st Cir.1979); Jackson v. East Baton Rouge Par.Sch. Bd., 348 So.2d 739 (La.App. 1st Cir. 1977)."
We find no evidence that this appeal was taken solely for the purpose of delay or that defendant's counsel does not seriously believe in the position he advocates. Further, the extensive medical evidence in this case and the different opinions rendered by the courts who have heard this case show that there are serious legal questions involved in this case about which reasonable minds could disagree. We cannot say that this is a frivolous appeal.
For the above and foregoing reasons the judgment of the trial court is affirmed. With regard to plaintiff's medical expenses, we find from the submitted medical bills that they thus far amount to $11,663.49. The costs of this appeal are assessed against the defendant.
AFFIRMED.