625 So.2d 1104 (1993)
Shimerine FOREMAN, Plaintiff-Appellee,
v.
WEST CALCASIEU-CAMERON HOSPITAL, Defendant-Appellant.
No. 92-1255.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1993.
Thomas Allen Filo, for plaintiff-appellee Shimerine Foreman.
Terry James Manuel, Scott James Scofield, for defendant-appellant West Calcasieu-Cameron Hosp.
Before DOMENGEAUX, C.J., and SAUNDERS and WOODARD, JJ.
*1105 SAUNDERS, Justice.
Defendant-appellant, West Calcasieu-Cameron Hospital (hereinafter referred to as West Cal-Cam), appeals from a judgment of the Office of Workers' Compensation in favor of Shimerine Foreman, plaintiff-appellee, wherein the defendant was ordered to pay plaintiff $9,860.77, consisting of $8,537.49 in past-due weekly compensation benefits and the remainder in penalties and interest.
Additionally, plaintiff was granted full weekly benefits in the amount of $218.91 for the duration of her total disability, or until such time as her benefits may be properly reduced to S.E.B. status, with 12% penalties and legal interest attached to those future payments made untimely. Further, defendant-appellant was ordered to pay plaintiff $2,500.00 in attorney's fees and costs. Finally, defendant-appellant was ordered to pay all related outstanding medical bills.
West Cal-Cam appeals, assigning the following as error:
I. THE LOWER COURT ERRED WHEN IT FOUND THAT PLAINTIFF WAS TEMPORARILY, TOTALLY DISABLED DESPITE PLAINTIFF'S TREATING PHYSICIAN'S UNQUALIFIED AND UNCONTRADICTED RELEASE OF PLAINTIFF TO RETURN TO FULL TIME EMPLOYMENT.
II. THE LOWER COURT ERRED WHEN IT HELD THAT PLAINTIFF IS ENTITLED TO SUPPLEMENTAL EARNINGS BENEFITS DESPITE HAVING FOUND THAT HER EMPLOYER HAD "SINCERELY" OFFERED HER A FULL TIME JOB THAT SHE WAS PHYSICALLY ABLE TO PERFORM.
III. THE LOWER COURT ERRED IN ORDERING WEST CAL-CAM TO PAY ANY AND ALL OUTSTANDING MEDICAL BILLS EVEN THOUGH PLAINTIFF DID NOT INTRODUCE ANY EVIDENCE WHATSOEVER TO SHOW THAT THERE WERE ANY OUTSTANDING MEDICAL EXPENSES.
IV. IN THE ALTERNATIVE, THE LOWER COURT ERRED IN AWARDING PENALTIES AND ATTORNEY'S FEES EVEN THOUGH THE COURT FOUND THAT WEST CAL-CAM "SINCERELY CREATED" A FULL TIME JOB FOR PLAINTIFF THAT HER TREATING PHYSICIAN HAD STATED SHE COULD PERFORM.
V. IN THE ALTERNATIVE, THE LOWER COURT ERRED IN NOT LIMITING LEGAL INTEREST TO BECOME DUE ONLY ON THE DATE OF EACH INSTALLMENT REQUIRED TO BE PAID.

FACTS
The hearing officer of the Office of Workers' Compensation, in his reasons for ruling, stated the essential facts, as follows:
The essential facts were undisputed. Claimant suffered a work-related injury on August 21, 1990. Eventually, her treating physicians stated that she could go back to light duty, with no lifting over 20 pounds. In September, 1991, defendant created a light-duty job which was approved by claimant's treating physician, Dr. James Perry. The hours for the job were from 11:00 p.m. until 7:00 a.m. Claimant refused the job because she had a child not yet a year old who needed special care during those hours, some of which could not be provided by a babysitter, such as nursing. Upon claimant's refusal, defendants terminated weekly benefits. Defendants provided no rehabilitation services until after her benefits were terminated.
Additionally, the judgment of the Office of Workers' Compensation made the following findings of fact:

I.
SHIMERINE FOREMAN suffered a compensable work-related injury on August 21, 1990, and as a result thereof is and has been disabled since August 21, 1990.

*1106 II.
Although her treating physicians released her to light duty, she has not at any time since her work-related injury on August 21, 1990 been able to return to full duty in her former occupation as a nurse.

III.
The defendant created or offered to claimant a light duty job which had been approved by claimant's treating physician. The offered position would have required claimant to work between the hours of 11:00 p.m. and 7:00 a.m.

IV.
Solely because she could not arrange for child care for her child who was not yet one year old, and who needed to be nursed, claimant refused the offered position. Defendant terminated claimant's worker;s [sic] compensdation wage benefits based on her refusal to accept the offered position.

DISCUSSION
The hearing officer for the Office of Worker's Compensation, in applying the law to the facts, concluded that the job offered to the plaintiff by her employer was unreasonable and that the termination of her benefits on September 11, 1992, was wrongful, in addition to being arbitrary and capricious, entitling her to penalties and attorney's fees. The hearing officer outlined his analysis in the reasons for ruling, as follows:
The job offered by the employer was unreasonable because the hours it was to be performed were between 11:00 p.m. and 7:00 a.m. Those hours are unusual. Claimant had not worked those hours prior to the injury. She had a baby to nurse and otherwise care for during those hours. If claimant did not have the maternal responsibility, then she might be reasonably expected to take the job. Or, if the job had been offered at different hours, it would have been a reasonable job regardless of her maternal duties. The fact that the light-duty job was sincerely created by the employerwhich the Court believes to be trueis not the only burden that the employer had to meet. In an effort to reduce or terminate weekly benefits, an employer should be allowed a reasonable latitude in fashioning a job for a light-duty employee; but, in exercising such latitude, the employer cannot totally disregard the convenience of the injured employee to the point where the employee has no other reasonable alternative but to turn the job down. Such was the case here.
The pivotal issue before this court is whether the hearing officer erred in finding that the plaintiff could reject a good faith offer of employment, at a higher wage, which she was physically able to perform, due to the fact that the work shift was inconvenient for the arrangement of child care. The defendant claims that, insofar as West Cal-Cam offered plaintiff a job which she was physically able to perform, that under LSA-R.S. 23:1221(3)(c)(i), she was no longer entitled to supplemental earnings benefits.
LSA-R.S. 23:1221(3)(a), (b) and (c) regarding supplemental earnings benefits states:
(a) For injury resulting in the employee's inability to earn wages equal to ninety per cent or more of wages at time of injury, supplemental earnings benefits equal to sixty-six and two-thirds percent of the difference between the average monthly wages at time of injury and average monthly wages earned or average monthly wages the employee is able to earn in any month thereafter in any employment or self-employment, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured and whether or not an occupation for which the employee at the time of the injury was particularly fitted by reason of education, training, and experience, such comparison to be made on a monthly basis. Average monthly wages shall be computed as four and three-tenths times the wages as defined in R.S. 23:1021(10).
(b) For purposes of Subparagraph (3)(a), of this Paragraph, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sums actually received by the employee, including, but not limited to, *1107 earnings from odd-lot employment, sheltered employment, and employment while working in any pain.
(c)(i) Notwithstanding the provisions of Subparagraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee's or employer's community or reasonable geographic region.

(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.
(Emphasis added.)
In Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1008, 1009 (La.1989), the Louisiana Supreme Court defined an employer's burden under LSA-R.S. 23:1221(3)(c)(i) as follows:
"The next step in the analysis requires an examination of what the employee is earning or is able to earn. The statute further explains this analysis in (3)(c)(i). The most logical interpretation of this provision is that the employer, if he wishes to contend that the employee is earning less than he is able to earn, bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region."
The courts have looked at the reasonableness of the employer's job offer in a variety of cases. In Kennedy v. Commercial Union Ins. Co., 572 So.2d 319 (La.App. 3d Cir.1990), although dicta, we noted:
"1. If Kennedy did qualify and was accepted for this position, he would have faced a 40 to 50 mile drive, one way, from his home in Eunice to Lafayette. Because of our holding herein, we do not reach the question of whether this would be "in the employee's or employer's community or reasonable geographic region" under La.R.S. 23:1221(3)(c)(i). We only note that it does not seem reasonable to expect a man suffering from chronic back pain to drive 80 to 100 miles a day for a job that only pays $125.00$150.00 a week."
Id., at page 321, ftn. 1.
Additionally, in Kennedy, supra, the fact that it was unclear whether the claimant's inability to read and write was considered in assessing his employment possibilities, was a factor which we considered in determining that the employer did not carry its burden under LSA-R.S. 23:1221(3)(c)(i). Likewise, in Arriaga v. Reliance Ins. Co. of Illinois, 564 So.2d 832, 837 (La.App. 3d Cir.1990), a case in which the claimant was functionally illiterate, we found that the employer did not tender realistic employment to the employee, nor did the employer meet its burden of proving that other work was available to the plaintiff where the employer's vocational rehabilitation expert had not taken the plaintiff's illiteracy into consideration.
Plaintiff also cites Tassin v. Cigna Ins. Co., 583 So.2d 1222 (La.App. 3d Cir.1991), for the proposition that an unreasonable offer of employment does not meet the employer's burden under LSA-R.S. 23:1221(3)(c)(i), i.e., to show that employment which the claimant is physically able to perform has been offered or is available. In Tassin, supra, the claimant was entitled to supplemental earnings benefits after the date his doctor released him to return to light duty work, even *1108 though he elected to go to college rather than return to some form of employment. The Tassin court found that the employer failed to prove that employment which the claimant was physically able to perform had been offered or was available and therefore, the employer's burden under LSA-R.S. 23:1221(3)(c)(i) had not been carried.
Finally, in Payne v. Country Pride Foods, Ltd., 525 So.2d 106 (La.App. 3d Cir.1988), much like the case at bar, the claimant had been offered his old job and returned for less than a month. He then chose to quit for reasons unrelated to his injury. The Payne court found that despite his good faith efforts, he had been unable to find employment due to both his disabilities resulting from his injuries and due to poor economic conditions.
The trial court concluded and this court agreed that Payne lacked the physical ability to earn at least ninety percent (90%) or more of his previous wages and that his injury placed him at a severe disadvantage in attempting to obtain employment and earn a living equivalent to his previous standard. In Payne, we determined that he was not physically able to perform the work and had returned to his previous position and wage scale "as an act of benevolence by a responsible employer." Payne, supra, at page 110.
In reaching this conclusion, we stated at page 109:
"This issue presents us with an interesting and difficult dilemma. We do not wish, on one hand, to deny an injured worker the right to refuse to work for his former employer or to terminate his employment relationship at the risk of losing his right to supplemental earnings benefits. This could place a worker in the tenuous position of working under unbearable or demeaning circumstances should an unscrupulous employer desire to eliminate SEB payments by coercing the worker into refusing the employer's offer of employment or coercing him into quitting subsequent to returning to work. We specifically note that these are not the circumstances of the instant case. On the other hand, we do not wish to permit a worker to hold his employer hostage by performing subquality work, when he is capable of better, with the knowledge that the employer will hesitate to release him aware that he will be obligated to pay supplemental earnings benefits, in addition to having to replace the employee."
In the case at bar, the hearing officer found that, although plaintiff had been offered a light duty job which had been approved by her treating physician, she could refuse the offered employment because she could not arrange for child care for the 11:00 p.m. to 7:00 a.m. shift. The hearing officer found that in order for an employer to satisfactorily comply with LSA-R.S. 23:1221(3)(c)(i), the job offered by an employer to its partially disabled employee must be reasonable. The hearing officer then found correctly, we believe, that a nursing mother with a six (6) month old child should not be required to find child care during the graveyard shift of 11:00 p.m. to 7:00 a.m. in order to maintain her entitlement to supplemental earnings benefits.
Contrary to defendant's characterization of the award as temporary total benefits, we find that the award made by the hearing officer was for supplemental earnings benefits calculated from a zero earnings base. For the sake of clarity, we will amend the judgment to properly classify the plaintiff's award of benefits as supplemental earnings benefits.
The hearing officer also found that, although the defendant "sincerely created" the offered job, it was an unreasonable offer and West Cal-Cam was arbitrary and capricious in terminating plaintiff's workers' compensation benefits. The hearing officer awarded a return of plaintiff's weekly benefits from September 16, 1991, together with penalties and attorney's fees. We do not find that the hearing officer was manifestly erroneous in the above findings and, thus, we affirm.
Appellant contends that the hearing officer erred in failing to clearly limit legal interest awarded in the judgment. The judgment states that "[a]ny future payments not timely made will also include a 12% penalty and legal interest thereon until paid." Appellant contends that this language does not clearly state that legal interest on untimely *1109 future installments should only begin on the date the future installment is due.
We find no merit in appellant's contention. The hearing officer's judgment only provides for legal interest to be awarded on future installments if not timely made and then only as they become due.
Finally, the appellant contends that the hearing officer erred in ordering them to pay any and all outstanding medical bills, even though the plaintiff did not introduce any evidence, whatsoever, to show that there were any outstanding medical expenses.
In Broussard v. Grey Wolf Drilling Co., 562 So.2d 1006 (La.App. 3d Cir.), writ denied, 567 So.2d 102 (La.1990), the trial court's judgment stated that the claimant was "entitled to all medical benefits resulting from the work related accident." In Broussard, the defendant contended that the judgment erroneously awarded a "blanket" recovery for medical expenses. We found no error in the trial court's judgment stating at page 1013:
"The judgment merely confirms plaintiff's right to assert his claim for any medical benefits arising from or relating to the accident as they might become due. Campbell v. Luke Const. Co., 543 So.2d 1032 (La.App. 3 Cir.1989); Anderson v. Eagle Asbestos Co., 355 So.2d 1082 (La. App. 4 Cir.1978)."
Similarly, in Johnson v. Acadian Contractors, 590 So.2d 623 (La.App. 3d Cir.1991), writ denied, 591 So.2d 700 (La.1992), the trial court judgment stated that LIGA was responsible for "all past and future medical expenses...." We stated at page 626:
"The settled rule is that a worker's compensation claimant is not entitled to an award for future medical expenses, but the right to claim such expenses is always reserved to him, even though the defendant's liability for them arises only when they are incurred. La.R.S. 23:1203; Campbell v. Luke Construction Co., 543 So.2d 1032 (La.App. 3d Cir.1989).
In Anderson v. Eagle Asbestos Co., 355 So.2d 1082 (La.App. 4th Cir.1978), the court found no error in a similarly worded judgment, stating:
The judgment for past expenses obviously refers to those expenses not paid by defendants, and the award for "future medical payments as they become necessary" merely confirms plaintiff's right to claim the expenses as they become due. Because defendants are responsible for the payment of medical expenses incurred in connection with the work-connected injury, we perceive no prejudice to defendants by the wording of the trial court's judgment relating to their payment.
355 So.2d at 1083."
In light of the above jurisprudence, we find no error in the hearing officer's judgment in this case ordering appellant "to pay any and all outstanding medical bills arising from Mrs. Foreman's August 21, 1990 work-related accident." This language merely affirms the plaintiff's right to assert her claim for any medical benefits arising as they might become due.[1]

DECREE
For the above and foregoing reasons, the judgment of the Office of Workers' Compensation is amended to reflect that the full weekly benefits awarded to the claimant are supplemental earnings benefits. In all other respects, the judgment is affirmed.
Costs of this appeal to be paid by defendant, West Calcasieu-Cameron Hospital, defendant and appellant, herein.
AFFIRMED AS AMENDED.
NOTES
[1] We also note that at the hearing, defendant's counsel stipulated that they would pay for work-related medicals.