liLABOBDE, Judge.
The employer appeals the finding of the hearing officer that plaintiff, a nurse’s helper, is entitled to temporary total disability from April 10 through September 30, 1992, medical expenses, attorney fees of $2,500, and legal interest.[1] Plaintiff answers the appeal, seeking supplemental earnings benefits (SEB) and penalties on untimely payment of her temporary total disability benefits. We affirm the hearing officer’s decision, and amend the judgment to award plaintiff SEB, unpaid temporary total disability benefits and statutory penalties.
Having reviewed the record in detail, we set forth the hearing officer’s written reasons in their entirety:
| .¡WRITTEN REASONS
This matter arises out of a claim for workers’ compensation benefits filed on behalf of plaintiff, MARCHELL PEROT. The parties stipulated at trial that an incident occurred on September 23, 1991 after a June, 1991 straining incident. Plaintiff has not returned to work since November 4, 1991. The parties also stipulated that Dr. Sandifer was plaintiff’s choice of physician.
At issue are the nature and extent of the plaintiffs disability, if any; unpaid medical bills; and penalties and attorney fees for any failure to pay workers’ compensation benefits to which plaintiff is entitled.
Plaintiff testified that she was 46 years old at the time of trial. She has a high school education and attended Vo-Tech school for two months in 1987. Her work history includes babysitting and sewing at home. She worked for defendant as a nurse’s aide for 5 years. Her job duties involved total patient care.
On direct examination, plaintiff testified that she strained her back on June 18, 1991 while lifting a patient. She did not work for one month and then returned September 23, 1991.
On September 23, 1991, she was transferring a patient from the | abed to a wheel chair when she injured her back. She did not work for a couple of weeks.
On November 4, 1991, plaintiff was again lifting a patient when her abdomen began to hurt on the left side. Later, she felt back pain.
Plaintiff did not testify regarding any disability. On cross examination, she acknowledged that she injured her abdomen on the above dates and not her back. She stated the back problems began the day after the last injury. On cross examination, she also testified that there was a period after the accident when she could not do her housework, but she could not remember how long. *380 She felt she was able to return to work a couple of months before trial on November 13, 1992, but made no attempts to return to work.
A preponderance of the evidence indicate that plaintiff was not timely paid after the 1st and 2nd incidents. No explanation was provided.
Following the last incident, temporary total disability benefits were paid until April 10, 1992. Martha Walker, claims adjuster for Hospital Services of Louisiana, a self insured fund, testified that benefits were suspended at that time. The decision to suspend benefits was based on plaintiffs alleged failure to cooperate with her doctor’s recommendations. The witness stated that the plaintiff had totally failed to cooperate with Intracorp’s medical management of her case.
On November 20, 1991, Intracorp representatives had forwarded to Ms. Walker a summary of the reports of Drs. Smith and Norwood.
There was a period, from November 15, 1991 through January 17, |41992, when the office of Ms. Walker flooded and benefits were not paid. The witness’ testimony is accepted as credible and the defense is not found to be arbitrary for this period of nonpayment.
Ms. Walker did not adequately explain, however, why she felt plaintiff was not cooperating with medical management sufficiently to justify suspension of benefits. She stated that plaintiff did not seek authorization for certain treatment and testing, but that it would have been denied if authorization was requested. The defense had no medical records indicating plaintiff could return to work when benefits were suspended.
Ms. Walker’s letter to Ms. Perot, dated April 15, 1992, indicates that Dr. Smith had diagnosed possible muscular strain with no evidence of neurologic involvement. Further, Dr. Donald Smith, a neurosurgeon, had recommended physical therapy and a followup appointment, which Ms. Walker felt plaintiff had not kept. Ms. Walker denied an examination by plaintiffs choice of physician, Dr. Baer Rambaeh, orthopaedist, on the ground that plaintiff had already been seen by her choice of physician, Dr. William Nor-wood, a general surgeon.
Renee Turner, who worked as a RN in the field of medical management for Intracorp on plaintiffs case, testified at trial. She stated that plaintiff was not cooperative in that she would not sign a consent form or an 19 form. She also did not communicate well and took an “unusual” amount of time explaining. Plaintiff said that some of the questions were “none of her business”. Even so, the interview lasted 2½ hours.
Plaintiff complained of pain in the low back and groin area. IsAn MRI revealed evidence of disc disease and lipomatosis of the cord. There was no evidence of nerve impingement.
A CT scan showed a central bulging disc associated with hypertrophy at the L4 space. A myelogram showed a simple disc bulge versus a central disc at L4-L4 and a bind spot at L5-S1. At L4-L5 there was anterior indentation of the sac, which did not appear to affect the nerve roots.
Ms. Perot’s treating physicians, Norwood and Rambaeh, did not indicate that her complaints of pain were inconsistent with objective findings. Dr. Smith, neurosurgeon, thought plaintiff might be exaggerating her symptoms. Dr. Glenn Sholte, neuro-consult, thought plaintiff might be exaggerating. By November 4,1992, Dr. Phillip Osborne, algol-ogist, felt plaintiff was exaggerating and that she could perform sedentary to medium-type work.
Based on a review of the medical records introduced at trial and the testimony of the plaintiff, it is the finding of the Office of Workers’ Compensation that plaintiff was disabled "from working through September, 1992. All unpaid medical bills related to testing and/or treatment for plaintiffs abdominal and back condition should be paid by the defense.
It also the finding of the Office of Workers’ Compensation that the issue of suspension of plaintiffs benefits for failure to cooperate with medical management and/or the termination of benefits due to nondisability was not reasonably controverted. Statutory penalties are awarded in addition to attorney *381 fees in the amount of $2,500.00. The parties should prepare a judgment in accordance with this decision.
I (¡ISSUES
The parties having stipulated that claimant was injured in the course and scope of her employment, the issues raised by defendant are whether she remained temporarily totally disabled beyond April 10, the date her temporary total disability and medical benefits were terminated, and if so, whether defendant’s termination of benefits was arbitrary and capricious, entitling claimant to attorney fees.
Each of the errors assigned by defendant springs essentially from questions of fact which we are loath to reverse. Whether or not a plaintiff is temporarily totally disabled is a question of fact; when such a decision is based upon reasonable evaluations of credibility, such a determination of fact should not be disturbed on appeal when there is evidence before the trier of fact which furnishes a reasonable factual basis for such a finding, unless such findings are clearly wrong. Landry v. Central Industries, Inc., 592 So.2d 478, 480 (La.App. 3d Cir. 1991), writ denied, 593 So.2d 381 (La.1992), citing, Sinegal v. Louisiana Blasters, Inc., 546 So.2d 308 (La.App. 3d Cir.1989). As to questions of claimant’s disability and the necessity of medical treatments and testing sought by claimant, the hearing officer chose to side with the medical and lay testimony presented in behalf of claimant. These credibility determinations, Including those based on written reports, Virgil v. American Guarantee and Liability Insurance Co., 507 So.2d 825 (La.1987), were not manifestly erroneous or clearly wrong. See generally, Bruno v. Harbert Intern. Inc., 593 So.2d 357 (La.1992) (collecting cases). We simply see no basis to ■ reverse the findings of the hearing officer. who determined, based largely on expert testimony, that plaintiff made her case by the requisite standard of clear and convincing evidence. See Lirette v. State Farm Ins. Co., 563 So.2d 850, 853 (La.1990). Accordingly, we find no error in the hearing officer’s determination that claimant was 7entitled to temporary total disability benefits during the period in question, or that she was entitled to medical benefits as contemplated by physicians whose opinions were deemed credible by the hearing officer.
Nor do we find that the hearing officer erred in awarding attorney fees. An employer who fails to investigate an employee’s compensation claim subjects itself to statutory penalties and attorney fees. Nelson v. Roadway Exp., Inc., 588 So.2d 350, 355 (La.1991). This is because an insurer is required to make a reasonable effort to ascertain an employee’s exact medical condition before benefits are terminated. Orgeron v. Tri-State Road Boring, Inc., 434 So.2d 65 (La.1983). This obligation is continuing in nature. Therefore if, subsequent to an initial optimistic report, an insurer receives medical information indicating the possibility of continuing disability, the insurer may not blindly rely upon the earlier report to avoid penalties for arbitrary nonpayment of compensation benefits. Walker v. Gaines P. Wilson & Son, Inc., 340 So.2d 985 (La.1976).
In this case, we find no error on the part of the hearing officer in determining that Ms. Turner prematurely closed claimant’s file, then wrongly refused to reopen it for a subsequently performed MRI of which she was apprised. The penalty provisions of LSA-R.S. 23:1201.2 apply to untimely payment of medical expenses and the wrongful denial of medical claims, as well as to weekly compensation benefits. Livings v. Langston Companies, 628 So.2d 1236, 1240-1241 (La. App. 3d Cir.1993) and cites therein.
Further, we find no error in the hearing officer’s determination that defendant presented insufficient evidence to show that claimant was uncooperative. To the contrary, while defendant’s adjuster indicated that her decision to terminate claimant’s-benefits was grounded in claimant’s refusal to cooperate with a nurse retained by her ^employer for purposes of “medical management,” that witness indicated that her visit with claimant lasted two and a half hours, hardly a sign of lack of cooperation. When asked when she had received Drs. Norwood’s and Smith’s medical records from Intracorp, Ms. Walker could not recall, but nurse Tur *382 ner indicated that Ms. Walker was informed of claimant’s need for an MRI by the end of January 1992. The hearing officer was not clearly wrong in determining that defendant had a duty to further investigate before terminating or failing to renew benefits. See Charles v. Aetna Cas. and Sur. Co., 525 So.2d 1272, 1276 (La.App. 3d Cir.), writ denied, 531 So.2d 480 (La.1988).
Further, we also find that claimant is entitled to statutory penalties. In her reasons for judgment, the hearing officer awarded claimant statutory penalties. However, this award was omitted from the judgment. Because defendant did not timely pay benefits to claimant, as required under -R.S. 23:1201 B, the penalty provision of R.S. 23:1201 E should be applied. Thus, plaintiff is entitled to the statutory penalty of 12% on all unpaid compensation.
Plaintiffs Appeal
In plaintiffs separate appeal, plaintiff alleges three assignments of error:
1. The hearing officer erred in failing to award unpaid temporary total disability benefits after each work injury in June and September, 1991; '
2. The hearing officer erred in failing to award a 12% penalty on the unpaid or untimely paid temporary total disability benefits; and
3. The hearing officer erred in failing to award supplemental earnings benefits after September 30, 1992.
Temporary Total Disability ■
Plaintiff claims that defendant did not pay the entire amount of temporary total disability owed after her first and second injuries. Plaintiffs first on-the-job injury |9occurred on June 18, 1991. She was unable to return to work until July 15, 1991, after she was released .by Dr. Sandifer. Plaintiff maintains that although her employer was not required to pay for the first week of disability, it should have paid a total of $340.02 for the following three weeks (3 weeks at $113.34). Instead, defendant only paid $276.87 in weekly disability benefits.
After plaintiffs second injury on September 23, 1991, plaintiff was unable to work for four weeks, until October 21, when she was released by Dr. Sandifer. Defendant was again responsible for three weeks of disability benefits totalling $340.02, but actually paid plaintiff only $226.68.
A 12% penalty is to be assessed if disability benefits are not paid within fourteen days of the employer’s knowledge of an employee's injury. R.S. 23:1201 E. Defendant received notice of plaintiffs first injury on June 18, but did not pay weekly benefits until July 11. Defendant received notice of plaintiffs second injury on September 23, but did not make payment until October 22. We find that the hearing officer should have ordered payment of the outstanding $177.51 due plaintiff in temporary total disability in addition to imposing a 12% penalty on these untimely payments.
SEB
In order to award SEB to a claimant, the injured employee must be unable to earn wages equal to or exceeding 90% of the wages he was earning at the time of the injury. Payne v. Country Pride Foods, Ltd., 525 So.2d 106 (La.App. 3d Cir.1988). Dr. Baer Rambach, an orthopedic specialist, reported that due to plaintiffs work injury, she was unable to return to her job as a nurse’s aide. A myelogram and CAT scan also provided objective support of her complaints of disabling pain, revealing a bulging disc at L4-5, with some swelling'of the ligament in that area. Dr. Osborne, | ipdefendant’s disability evaluation specialist, believed that plaintiff had a permanent anatomical disability and that she was only capable of sedentary or light duty up to medium work, as defined by the Dictionary of Occupational Titles. Further, the claims adjuster, Martha Walker, testified that she was aware that the orthopedists had precluded plaintiff from returning to her previous job and restricted her to light duty work, but did not offer plaintiff a light duty position.
The Supreme Court has defined an employer’s burden under LSA-R.S. 23:1221(3)(c)(i), concerning entitlement to SEB as follows: if an employer contends that the employee is earning less than he is able to earn, then it bears the burden of proving that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was *383 available to the employee in his or the employer’s community or reasonable geographic region. Daigle v. Sherwin-Williams Co., 545 So.2d 1005, (La.1989); Foreman v. West Calcasieu-Cameron Hospital, 625 So.2d 1104 (La.App. 3 Cir.1993), writ denied, 631 So.2d 450 (La.1994).
We find that defendant-employer has not satisfied its burden of proof in the present case. The medical reports as well as claimant’s own testimony establish that plaintiffs injury prevents her from returning to her previous employment. Defendant presented no evidence demonstrating that she was able to perform other employment, or that such other employment was offered to plaintiff or available in her community. In fact, claims adjuster Martha Walker stated that no light duty job was ever offered to plaintiff, even though she had been informed that plaintiff was restricted to light duty employment. Thus, we find plaintiff is entitled to SEB, retroactive to September 30, 1992, when plaintiffs temporary total disability ended.
Decree
| nThe judgment of the hearing officer is affirmed and amended to include an award of supplemental earning benefits from September 30, 1992, $177.51 in temporary total disability benefits plus statutory penalties on all unpaid or untimely paid compensation. Defendant to bear all costs of this appeal.
AFFIRMED AS AMENDED.

. The hearing officer's written reasons, but not her judgment, also called for penalties.