649 So.2d 1161 (1995)
Ricky ROSZELL, Plaintiff-Appellant,
v.
SKIP CONVERSE INTERIOR COMPANY, INC., Defendant-Appellee.
No. 94-825.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
Writ Denied April 20, 1995.
*1163 George Arthur Flournoy, Alexandria, for Ricky Roszell.
Howard Battle Gist III, Alexandria, for Skip Converse Interior Co., Inc.
Before LABORDE, YELVERTON and COOKS, JJ.
COOKS, Judge.
Claimant appeals the hearing officer's finding that he is not entitled to supplemental earnings benefits. He also appeals the hearing officer's conclusion that he is not entitled to recover medical expenses for an examination by a second orthopaedic physician he selected nor penalties or attorney's fees. For the following reasons, we reverse in part and affirm in part.

FACTS
Ricky Roszell was employed by Interior Company, Inc. (Interior)[1] as a laborer. His duties included tearing down walls with a sledgehammer; carrying 50-60 pound bags of plaster mix; hauling sheetrock, concrete in wheelbarrows, cabinets and furniture; and sweeping floors. On April 30, 1992, Roszell fell nine feet from a ladder and was knocked unconscious. He was treated in a hospital emergency room and released. After receiving treatment from a chiropractor, Interior sent Roszell to Dr. Jerry Smith, a physiatrist. Dr. Smith concluded Roszell had a myofascial injury to his right shoulder and cervical paraspinous musculature. He also found a separation of the acromioclavicular (AC) joint in Roszell's right shoulder. After several weeks of physical therapy, Dr. Smith released Roszell on June 10, 1992 to perform light duty work. He instructed Roszell to avoid carrying anything that weighed more than fifteen pounds and to avoid using a hammer.
Interior paid Roszell temporary total disability benefits until he was released to perform light duty work. Following his release, Interior assigned Roszell to perform light duty work at ninety-percent of his pre-injury wage. However, Roszell began to experience pain and a crunching or grating sensation in both shoulders. Interior very reluctantly approved an exam by Dr. Douglas L. Gamburg, an orthopaedic surgeon, on June 24, 1992. Further, Roszell testified Interior only approved one exam by Dr. Gamburg. Dr. Gamburg concluded Roszell's symptoms, x-rays and his findings were consistent with an injured rotator cuff and a possible injury to the AC joint. Roszell also had signs of residual inflammatory reaction in the right subacromial bursa. Dr. Gamburg reported Roszell had not reached maximum medical recovery. Dr. Gamburg gave Roszell an injection of steroid medication, prescribed pain medication and suggested Roszell attempt to return to light duty on June 29, 1992.
Shortly after his visit to Dr. Gamburg's office, Roszell was transferred to a construction site at a local hospital. One week later, Roszell was advised that his crew would begin working a night shift at the hospital. Roszell told his supervisor, John L. Briggs, he could not work nights because his wife worked nights at another hospital and he needed to be home with his children. Briggs informed Roszell that if he did not work the night shift, he could choose to be terminated or receive unemployment benefits. Roszell received unemployment benefits from August 15, 1992 through December 31, 1992.
Roszell began working as a cookie salesman on January 4, 1993. His job as a cookie salesman did not pay ninety percent or more of his pre-injury wages. Moreover, he was still experiencing pain in his neck and shoulders. His wife, in an attempt to make the business successful, quit her job at the hospital to assist him with lifting boxes and cookie trays as well as helping to shelve the cookies. Eventually, Roszell resigned from his position as cookie salesman and began looking for work again.
Roszell sought the advice of counsel, who referred him to another orthopaedic surgeon, Dr. Michael Brunet, who specializes in the treatment of shoulder injuries. Dr. Brunet examined Roszell in May 1993. He testified *1164 Roszell's x-rays revealed a narrowing at C5-6. Dr. Brunet stated he suspects Roszell has a neck injury given the nature of his complaints. He recommended an EMG and an MRI, which Interior has refused to authorize.
Following our decision in Foreman v. West Calcasieu-Cameron Hospital, 625 So.2d 1104 (La.App. 3d Cir.1993), writ denied, 631 So.2d 450 (La.1994), the hearing officer concluded Interior's demand that Roszell work the night shift or suffer termination was unreasonable. However, the hearing officer held Roszell failed to show a disability prevented him from earning ninety percent of his wages. The hearing officer also concluded it was unreasonable for Roszell to change orthopaedic physicians, although he is entitled to continuing medical treatment. Further, Roszell's demand for penalties and attorney's fees were rejected.

DISCUSSION

Supplemental Earnings Benefits
Interior does not appeal the hearing officer's finding that Roszell did not voluntarily quit his job. Roszell, however, contends he is entitled to supplemental earnings benefits, excluding the period he received unemployment benefits.
The hearing officer concluded Roszell's inability to earn ninety percent or more of his pre-injury wage was not due to a work-related injury. Since Roszell periodically worked parttime for a friend performing light duty jobs, the hearing officer concluded Roszell failed to prove he was "unable to work due to disability." However, the fact that a claimant is working does not prove he is not disabled. The relevant questions when determining eligibility for supplemental earnings benefits are: 1) whether the claimant has a work-related injury, and 2) whether the work-related injury resulted in an inability to earn wages equal to ninety percent or more of the claimant's pre-injury wage. LSA-R.S. 23:1221(3)(a). The hearing officer's findings are factual in nature and should not be disturbed on review unless clearly wrong or manifestly erroneous. Bruno v. Harbert Int'l, Inc., 593 So.2d 357 (La.1992).
It is undisputed that Roszell suffered a work-related injury. Interior ostensibly admitted Roszell was entitled to supplemental earnings benefits. When Roszell was released to perform light duty work, Interior re-assigned him to perform light duty tasks and paid him only ninety percent of his pre-injury wage. Interior later attempted to relieve itself of its obligations under the worker's compensation laws by issuing Roszell an ultimatum: suffer termination for failing to work a night shift or receive unemployment benefits.
Roszell and his wife testified he has experienced pain and discomfort since his accident. In evaluating the evidence, the trier of fact should accept as true the uncontradicted testimony of a witness, even though the witness is a party, at least in the absence of circumstances in the record casting suspicion on the reliability of this testimony. See Hopes v. Domtar Industries, 627 So.2d 676 (La.App. 3d Cir.1993). The hearing officer appears to have doubted the testimony because Roszell had coached his sons' summer baseball league. However, Roszell also testified his duties as coach did not violate the restrictions imposed by the physicians.
Dr. Gamburg found Roszell had not reached maximum medical improvement when he examined him in June 1992 and released him to perform only light duty work. Dr. Brunet, who examined Roszell in May 1993, also concluded Roszell could only perform light duty work. Dr. Brunet found Roszell was in need of additional diagnostic tests. Both physicians reported Roszell was only capable of doing light duty work. On this record, the hearing officer was clearly wrong in concluding Roszell was not disabled.
The hearing officer also found Roszell's failure to earn ninety percent or more of his pre-injury wage was due to poor cookie sales and not his disability. Whether Roszell could have earned ninety percent or more of his pre-injury wage as a cookie salesman is purely speculative. Roszell's disability limited the kinds of jobs he was capable of performing. Therefore, he accepted a position as a cookie salesman. While employed as a *1165 cookie salesman, he did not earn ninety percent or more of his pre-injury wage. Thus, Roszell proved by a preponderance of the evidence his injury resulted in an inability to earn ninety percent or more of the wages he was receiving at the time of his injury.
Once the claimant has established a prima facie case of entitlement to supplemental earnings benefits, the employer has the burden of showing that claimant is physically able to perform work that was offered or available in his reasonable geographic region. LSA-R.S. 23:1221(3)(c)(i); Prudhomme v. DeSoto Professional Home Health Services, 579 So.2d 1167 (La.App. 2d Cir.1991). Interior failed to carry this evidentiary burden. Accordingly, Roszell is entitled to supplemental earnings benefits.

Choice of Another Physician And Entitlement to Continued Medicals
Roszell was examined by two orthopaedic surgeons of his choice. LSA-R.S. 23:1121(B) provides that an employee has the right to select one treating physician in any field or specialty. However, prior consent must be obtained from the employer or the worker's compensation carrier for a change of treating physician within within that same field or specialty. LSA-R.S. 23:1121(B). Roszell did not seek Interior's approval for an exam by Dr. Brunet. Therefore, Interior is not liable for Dr. Brunet's fees.
The hearing officer properly concluded Roszell is entitled to further medical treatment. In other words, Roszell's first visit to Dr. Brunet was made without Interior's consent, and therefore, Roszell is responsible for payment. Roszell has established the reasonableness and necessity for further treatment. Therefore, Interior is liable for Roszell's continued medical treatment. See Stelly v. United Parcel Service, 600 So.2d 156 (La.App. 3d Cir.1992).

Penalties and Attorney's Fees
Roszell contends the hearing officer erred in denying his claims for penalties and attorney's fees. LSA-R.S. 23:1201(E) directs the trial court to assess a twelve percent penalty for nonpayment unless the employer or the insurer "reasonably controverted" the employee's right to benefits. A claim is reasonably controverted if the employer or the insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the employee. Woolsey v. Cotton Bros. Bakery Co., Inc., 535 So.2d 1119 (La.App. 2d Cir. 1988), writ denied, 537 So.2d 1168 (La.1989). Under LSA-R.S. 23:1201.2, the employee is entitled to attorney fees if the failure to pay benefits is found to be arbitrary, capricious, or without probable cause. An award of attorney fees is precluded when the employer asserts a good faith defense. Holmes v. Int'l Paper Co., 559 So.2d 970 (La.App. 2d Cir.1990). The determination of whether an employer should be cast with penalties and attorney's fees is a question of fact and the hearing officer's findings shall not be disturbed on appeal absent manifest error. Bradley v. Justiss Oil Co., Inc., 618 So.2d 646 (La.App. 2d Cir.1993).
We find the hearing officer's denial of penalties and attorney fees was manifestly erroneous. When Interior thrust Roszell into the ranks of the unemployed by issuing him the ultimatum, it had already acknowledged he was disabled and eligible to receive supplemental earnings benefits by reducing his pay to ninety percent of his pre-injury wage. Interior has not produced any evidence to contradict Roszell's claim of disability. Moreover, the physicians who examined Roszell in June 1992 and May 1993 stated Roszell cannot perform the kind of work he used to perform; and he needs further diagnostic tests and treatment. Therefore, penalties are due on the unpaid amount. The award of attorney's fees must be reasonable and based upon the degree of skill and work involved in the case, the number of court appearances, the depositions, the office work and the time spent in court. Frazier v. Conagra, Inc., 552 So.2d 536 (La. App. 2d Cir.1989), writ denied, 559 So.2d 124 (La.1990). After considering these factors, we conclude an attorney fee award of $5,000 is appropriate.
Roszell further complains Interior failed to timely pay his benefits. Interior knew of Roszell's injury on the day it occurred, April 30, 1992. Briggs, Roszell's supervisor *1166 and Interior's general superintendent, testified Roszell's benefits did not begin within the time period prescribed by law. See LSA-R.S. 23:1201(A). Roszell also presented medical evidence showing further medical diagnostic tests and treatment were necessary, and Interior failed to reasonably controvert Roszell's claim for medical expenses. Therefore, a twelve percent penalty is assessed against Interior for these late payments as required by LSA-R.S. 23:1201(E).

DECREE
For the foregoing reasons, the hearing officer's judgment denying Roszell's claim for supplemental earnings benefits, penalties and attorney's fees is reversed. That portion of the judgment denying Roszell a change in treating orthopaedic physicians is affirmed. Costs are assessed to Interior.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] In its answer, Interior Co. declared Roszell improperly named it as "Skip Converse Interior Co., Inc." in his petition. John L. Briggs, Interior's general superintendent, testified Skip Converse and Interior are separate but related companies.