381 So.2d 969 (1980)
Frank CARVER
v.
Manuel CABIRO and Allstate Insurance Co.
No. 10863.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1980.
*970 John P. Ferrara, New Orleans, for plaintiff-appellant.
John F. McDonald, III, Bagert, Bagert & McDonald, New Orleans, for defendant-appellee.
Before GULOTTA, SCHOTT and GARRISON, JJ.
SCHOTT, Judge.
Plaintiff has appealed from a judgment awarding him $2,000 for damages pursuant to a jury verdict. He contends that the award was inadequate. The issues are whether remarks made by defendants' counsel during his voir dire of the jurors, his opening statement and his summation were prejudicial, whether the court's giving of one of the special instructions requested by defendants constituted prejudicial error, and whether the verdict was so inadequate as to constitute an abuse of the jury's discretion.
The accident occurred on June 18, 1976, when plaintiff's automobile was struck from the rear by defendants'. On the following day he sought medical treatment at the emergency room of Methodist Hospital where X-rays were taken, he was given a prescription for a muscle relaxant and he was told to see his own doctor. He saw Dr. Bernard P. Manale, an orthopedic surgeon, for the first time on June 24 and saw him three times during the month of July and once each month during August, September, October and December, 1976, January, April, May and September, 1977, twice in May, 1978, and once in February, 1979, one week before the trial. Dr. Manale referred him to neurologist, Dr. Maria Palmer, for studies in July, 1976.
According to plaintiff, he experienced pain in his shoulder on the day of the accident and when this became worse on the following day he went to Methodist Hospital. Dr. Manale prescribed a cervical collar which he wore for ten or twelve weeks on a regular basis and still wore occasionally at the time of the trial, but his best source of relief was to lie flat on the floor with a *971 rolled up towel under his neck. Asked why he was not wearing the collar on the days of the trial he answered: "Frankly, I feel pretty good today." He still had pain at the time of the trial on an irregular basis in that it would last for three or four days and then be absent for one or two weeks. Although he missed a few days of work in seeing doctors in the earlier days of his injury he suffered no loss of pay on his job as buyer for a department store. He is required to travel a great deal, and long airplane flights particularly aggravated his pain. He has difficulty with the use of his left arm preventing him from carrying luggage, swimming, and gardening. He has gotten raises in the three years since the accident based on his performance, but he feels that the accident has distracted him from top mental performance on his job without permanently injuring it. He denied having any difficulties whatsoever prior to the accident.
Dr. Manale testified as follows: In his examination of plaintiff on June 24, 1976, he found pain and tenderness along the posterior aspect of the neck and the muscle between the base of the neck and the shoulder. There was no limitation of motion but with certain motions there was pain running into plaintiff's left hand and he appeared to have a diminished feeling in the top of the forearm and base of the thumb. X-rays taken at the Methodist Hospital revealed a narrowed space between C-5 and C-6 with bone spurs. He prescribed the collar and medication and later a traction device.[1] His initial diagnosis was cervical sprain with pre-existing degenerative arthritis in the neck and a possible nerve injury which caused the abnormality in his left arm and hand. He referred plaintiff to Dr. Maria Palmer, the neurologist.
Dr. Palmer testified she performed electrodiagnostic studies on plaintiff which consisted of conduction studies and an electromyogram of the left arm. This revealed a mild abnormality "not very pronounced" indicating irritation of nerve root without positive findings for loss of nerve supply. She characterized the abnormality as a minimal or mild irritation emanating from the nerve at the C-5 level of the cervical spine.
Dr. Manale continued to treat plaintiff periodically and saw him for the last time on February 28, 1979, just before trial. In his opinion, plaintiff still had radiculitis, inflammation of the nerve root, degenerative arthrosis or arthritis of the neck and degenerative disc disease the symptoms of which were activated by the trauma. He had an abnormal neck before the accident based on the bone spurs found in the X-ray studies. Dr. Manale also spoke of possible surgery in the event that plaintiff's condition would worsen.
A notable weakness in Dr. Manale's testimony was his statement that his diagnosis was largely based on the history given to him by the patient, specifically that he had no difficulty prior to the accident. But he stuck to the opinion based on his own experience in treating patients, that plaintiff's arthritis had been latent and was activated by the trauma of the accident. Significantly, although Dr. Manale spoke of the possibility that plaintiff had a ruptured disc he never found any spasm in plaintiff except on the very last visit on February 28, nor was there any significant atrophy in the left arm. Finally, Dr. Manale did not say that it was even probable that plaintiff would require surgery, only that it was possible if his condition worsened.
Plaintiff also called his wife and son who testified that his activities were curtailed since the accident and he complained of problems with his left arm whereas he never complained prior to the accident.
Plaintiff's first specification of error concerns the remarks made by defendants' counsel in voir dire, opening statement, and closing argument. We have concluded that this specification has no merit; first, because no objections were made during the trial at the time the statements complained of were made; and second, the trial judge properly instructed the jury that statements made by counsel were not evidence *972 but were only "his game plan" in the case of opening statement and theories in the case of his argument. The only objection at any time was made during the opening statement of defendants' counsel when he was outlining plaintiff's activities on the day after the accident, as follows:
"Mr. Ferrara:
Your Honor, I object, I think he is testifying; I think he is going beyond the areasup against the Court's will.
The Court:
Again, I understand the jury that all intelligent individuals will understand what I said beforethat because Mr. Bagert or Mr. Ferrara tells you something happened you are not to consider that as happening until you have a chance to view the creditability and the posture of the witnesses and then make up your mind, at that point, and again, for the Record this is only a statement of what the defense, at this time, intends to establish.
You are not to consider that for any purpose as evidence."
While this objection was made timely by plaintiff's counsel the instruction of the trial judge was adequate to prevent defendants' counsel from creating any undue prejudice in the minds of the jurors.
Plaintiff's specification of error on the instructions to the jury developed from the fact that plaintiff had subpoenaed Dr. Irving Redler to testify as a witness in his behalf but he failed to call Dr. Redler as a witness. In the presence of the jury he attempted to explain that Dr. Redler had not shown up in response to the subpoena because of the doctor's busy schedule. On the day the two-day trial began defendants had submitted the following jury instructions:
"If plaintiff failed to call a witness who he has subpoenaed, you may presume that the witness's testimony would have been unfavorable to the plaintiff."
The trial judge in instructing the jury included the following:
"In this case, the record reveals that the plaintiff had subpoenaed a witness who did not appear. The law of this state relative to that situation is as follows:
If a plaintiff fails to call a witness who he has subpoenaed, you may presume that witness's testimony would have been unfavorable to the plaintiff."
Plaintiff objected in globo to five instructions submitted by defendants, including the one quoted above, but on the ground that he had not received copies of these proposed instructions until the evening of the first day of the trial and was unprepared for them. He took the position that this was in violation of pre-trial orders which had been issued long before the case came to trial and which required counsel to include prior to pre-trial conferences a list of suggested jury instructions. Plaintiff's counsel argued: He was prevented from calling a witness who was not included in the pre-trial order after defendants' counsel objected because of being taken by surprise; but plaintiff's counsel was likewise taken by surprise with defendants' instructions but was denied the same consideration given to defendants. Plaintiff assigns error in the trial judge's failure to permit him to call that witness as well as the giving of defendants' instructions.
Three separate pre-trial orders were issued in this case on February 17, March 28 and July 14, 1978, in which both sides were ordered to submit a list of definite as well as possible witnesses. The order contained the statement that "only listed witnesses will be allowed to testify." Thus, plaintiff was not entitled to call the witness he failed to list in his pre-trial order. Furthermore, there is no mention either by proffer or by statement of counsel in the trial court, or this court, as to what this witness would have testified to. We see no error in the ruling of the trial court denying plaintiff's right to call that witness and we are unable to evaluate what effect that witness's testimony may have had in any event.
The same restriction on the use of special instructions is not contained in the pre-trial order, that is, there is no statement to the effect that the failure to submit *973 the instructions in advance will preclude their use. Furthermore, plaintiff could not plead surprise since he was furnished with copies of the proposed instructions on the day before the trial reached that point where the instructions were to be given. Thus, plaintiff's general objection to all five special instructions is without merit.
As to plaintiff's objection to the one instruction on his failure to call a witness who was under subpoena, his failure to make a specific objection, stating his reasons for the objection, constitutes a waiver of an objection to that instruction, LSA-C.C.P. Art. 1973. In any event, for our purposes on review we are favored with a report in the record from Dr. Redler, dated November 23, with respect to his examination of plaintiff on November 18, 1977. This report concludes with the opinion that plaintiff has had recurrent episodes of pain about the left side of his neck with radiation into the left hand since the accident eighteen months previous; clinical examination did not reveal any abnormalities with the exception of the fact that the left triceps and ulner reflex in the left upper extremity could not be elicited; X-ray studies reveal severe degeneration of the intervertebral disc space between the 5th and 6th cervical vertebra with osteophytes in the foramina on the left side between these vertebras but that these changes are probably of long standing. Dr. Redler recommended cervical traction for plaintiff which he used and of which the jury was aware.
The award of $2,000 includes specials amounting to $729.94. However, this includes $60 for medical report from Dr. Manale and $150 for his fee for attending a deposition. Thus, specials are a little over $500, leaving $1500 for general damages in the award. The award may be low, but we are unable to articulate reasons for increasing the award as required by Reck v. Stephens, 373 So.2d 498 (La.1979). We reach this conclusion because there is little evidence of any injury to plaintiff other than activation of pre-existing arthritis proof of which depends on plaintiff's own credibility. If the jury did not believe plaintiff and his wife and son in their testimony that plaintiff had no difficulty before the accident as opposed to pain and disability following the accident, and they likewise concluded that plaintiff did not tell Dr. Manale the truth when he gave him the history of no pain or difficulty prior to the accident, this explains their verdict. All of plaintiff's difficulties supposedly stem from the arthritis. He had no objective symptoms of disc disease such as spasm until the one visit two and a half years after the accident and no explanation was ever given as to why this isolated incident of spasm would be related to the accident in the absence of any spasm prior to that time. For us to increase the award would require us to invade the jury's function of evaluating plaintiff's credibility and would not be a proper exercise of our appellate function. We therefore affirm the judgment.
AFFIRMED.
NOTES
[1] Plaintiff testified that the traction device was prescribed by Dr. Redler.