DOUCET, Judge.
The plaintiffs, Gilbert and Jocelyn Gallow, appeal a jury verdict and the denial of their motion for new trial.
The plaintiffs filed suit against Jack Eck-erd Corporation (Eckerd), its insurer, and Walter Grier, an Eckerd employee. Plaintiffs allege that Mrs. Gallow was injured while a customer in an Eckerd Drug Store in Opelousas, La. They allege that she was stooping to look at some perfume bottles on the lower shelf of a display when Walter Grier, the store manager, came down the aisle carrying a pile of boxes, tripped over Mrs. Gallow, inflicted a blow to her head, and knocked her to the floor.
As a result of this fall, the Gallows allege that Mrs. Gallow sustained serious, permanent injury to her head, neck, back, arms, and left leg. Mrs. Gallow later required surgical fusion of vertebrae in her neck.
At trial, the defendants contested both the occurrence of the fall and the causal connection between the injuries and the alleged fall. In contrast to Mrs. Callow’s version of the incident, Mr. Grier testified that he was coming down the aisle carrying only one box. Mrs. Gallow was stooping down looking at perfume. Grier stated that he was passing about a foot and a half behind her when she tried to get up and began to fall backwards. He testified that he threw aside the box he was carrying and caught Mrs. Gallow before she could hit the floor. First catching her shoulders with both hands and her buttocks against his knee, he helped her to her feet. He testified that Mrs. Gallow never hit the floor.
Mr. Grier’s testimony was corroborated by that of Charlene Andrus, who was an employee óf Eckerd at the time and an eyewitness to the accident. During the trial, the plaintiffs attempted to impeach the evidence of Andrus by attempting to enter into evidence an alleged prior inconsistent statement in the form of a statement given to an investigator. On questioning by plaintiffs’ counsel, Andrus denied having made the statement. The plaintiffs offered the statement into evidence. The Judge refused to allow the tape into evidence because it had not been listed in the plaintiffs’ pretrial check list as required by the court’s pretrial order. The plaintiffs entered the statement into the record as a proffer.
The jury returned a verdict finding that Mrs. Callow’s injuries were not caused by negligence on the part of Walter Grier.
The plaintiffs moved for a new trial or a judgment notwithstanding the verdict (JNOV) arguing that the exclusion of the statement denied them a fair trial. The de *972 fendants moved to recuse the trial judge based on statements made by the judge evidencing his willingness to grant a new trial in order to allow the statement into evidence and his feeling that Andrus had committed perjury. The motion to recuse was heard by another judge who granted the recusal. As a result, the plaintiffs’ motion for new trial or JNOV was heard by a third judge who denied the motion. Plaintiffs appeal the jury verdict, the recusal of the trial judge, and the denial of the motion for new trial.

EXCLUSION OF STATEMENT

The plaintiffs argue that the trial court erred first in excluding the statement and, second, in refusing to grant a new trial to allow its inclusion.
There is no question that the statement was not listed on the plaintiffs’ pretrial checklist. The pretrial order states with regard to witnesses and exhibits as follows:

1. WITNESSES

Unless a witness appears on a PreTrial List, he will not be allowed to testify. This applies also to rebuttal witness

2. EXHIBITS

Exhibits to be used on trial will be listed on the Pre-Trial Check List; and copies, if requested by opposing counsel will be furnished to opposing counsel rather than filed with the Clerk. (The Court was accustomed to having same prefiled with the Clerk, but is informed by counsel that the cost of accomplishing same is prohibitive.) If the above procedure is violated, the exhibits will not be admitted at trial, (emphasis added)
La.C.C.P. art. 1551 provides for trial courts to hold pretrial conferences and to issue pretrial orders.
In any civil action in a district court the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider:
(1) The simplification of the issues;
(2) The necessity or desirability of amendments to the pleadings;
(3) What material facts and issues exist without substantial controversy, and what material facts and issues are actually and in good faith controverted;
(4) The possibility of obtaining admissions of fact and of documents which will avoid unnecessary proof;
(5) The limitation of the number of expert witnesses; or
(6) Such other matters as may aid in the disposition of the action.
The court shall render an order which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. Such order controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice, (emphasis added)
The plaintiffs argue that since the pretrial order does not specifically require impeachment evidence to be listed, the statement should have been admitted. This is a hyper-technical reading of the order. The pretrial order states that counsel must list the exhibits to be used at trial and clearly provides that exhibits not listed may not be used at trial. See Carver v. Cabiro, 381 So.2d 969 (La.App. 4th Cir.), writ denied, 383 So.2d 782 (La.1980).
Putting aside the technicality of whether the pretrial checklist required listing impeachment evidence, it was unjust of the plaintiffs to keep this statement secret knowing full well that its production at the trial was a near certainty. We should not reward the plaintiffs for conduct which was in violation of the spirit as well as the letter of the pretrial order.
Plaintiffs had Andrus’ taped telephone statement four months before trial. Plaintiffs had her deposition, which allegedly differed from her telephone statement, two weeks before trial. Plaintiffs were under a continuing duty to supplement the pretrial *973 cheek list. Plaintiffs should have known, two weeks before trial, that the recorded telephone statement would be offered at trial, no matter what. If Andrus testified at trial the same way she did two weeks earlier at her deposition, plaintiffs would try to impeach her with the telephone statement, because her trial testimony was unfavorable to plaintiffs. If Andrus testified differently at trial from the way she did in her deposition, then defendants would want to impeach her with her deposition. In that event, plaintiffs would try to rehabilitate her with the telephone statement. Therefore, the question of whether this was impeachment evidence, or evidence in chief, is a technical distinction that makes no difference at all. Plaintiffs knew that the taped telephone statement was going to have to go into the record, regardless, and this knowledge invoked a concomitant duty to disclose the presence of the tape. Its concealment was in violation of the pretrial order. Therefore, the statement was properly excluded.
Additionally, since the statement was proffered into the record, we have it before us and can consider its probable impact on the proceedings. Even if the three page telephone statement was admitted and considered by us, it does not have sufficient impeachment force to discredit the testimony of Andrus. In her testimony at the trial, An-drus testified that Mrs. Gallow was stooping over examining something on a bottom shelf when the store manager came walking up. When the plaintiff went to get up, she lost her balance and fell back on the store manager and he caught her by her shoulder to keep her from falling. He asked her if she was okay, and she said she was okay. He asked her if she was sure she was all right, and she again answered that she was okay.
In her telephone interview, Andrus said that the store manager was stooping over, putting something on one of the shelves, and when he went to get up, Mrs. Gallow was passing behind him and she tripped but she didn’t fall. Andrus asked Mrs. Gallow if she was all right, and Mrs. Gallow said yes, she was all right. On the second page of this three page telephone manuscript, Andrus stated six times that Mrs. Gallow did not fall. She also stated numerous times during the trial that Mrs. Gallow did not fall.
Both the trial judge and counsel for plaintiff say that Andrus’ purported telephone statement corroborated the plaintiffs’ story. This is wrong. The truth is, her telephone statement was different from both plaintiffs’ and defendants’ version of the incident in one detail, but in all of the other, more significant details, the telephone statement corroborated the defendants’ story. Neither the plaintiffs nor the defendants allege that the store manager was stooping as was stated in Andrus’ purported statement. Andrus, both at trial and in her statement, testified that plaintiff did not fall to the floor. She also consistently declared that Mrs. Gallow, herself, repeatedly said that she was not hurt.
It is alleged in plaintiffs’ petition, and emphasized in their arguments throughout this case, that the store manager came rushing down the aisle and violently knocked Mrs. Gallow to the floor. Plaintiff so testified. Andrus at no time corroborated that allegation and that testimony. She consistently testified to the contrary, that plaintiff did not fall at all, that she merely stumbled, and the store manager caught her and kept her from falling.
In view of the importance attached in the telephone statement to the questions of whether Mrs. Gallow fell, and whether she was hurt, and the statement’s emphasis on those aspects of the accident, the discrepancy as to who was stooping and who was standing is of relative insignificance, and does little to impugn Andrus’ veracity.
Moreover, since Andrus denied making the telephone statement and the person on the other end of the alleged telephone statement never testified, and was never even called to court, there is nothing in this record, on which this court can base a finding that Andrus gave conflicting testimony.
Having determined that the statement was properly excluded from evidence, we need not consider the propriety of the recusal or the denial of a new trial, these issues having been rendered moot.

SUFFICIENCY OF THE EVIDENCE

Plaintiffs further argue that the jury verdict was not supported by the evidence.
*974 When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.
Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973).
Based on the evidence adduced at the trial of this case, the trier of fact, making reasonable credibility evaluations, could have reached the conclusion that the defendants’ negligence did not cause Mrs. Gailow’s injuries in two ways. The jury could have accepted the testimony of Mr. Grier that he did not run into Mrs. Gallow and that Mrs. Gal-low did not fall onto the floor.
Alternatively, the jury may have concluded that the fall occurred but that it did not cause the injuries sustained by Mrs. Gallow. It was revealed at trial that Mrs. Gallow had four accidents prior to the Eckerd incident. Those accidents resulted in symptoms similar to those claimed to result from the Eckerd incident. In 1984, Mrs. Gallow injured her low back in an on-the-job accident. In February 1986, she ruptured a disc in her low back as a result of an accident while changing a tire at her home. In August 1986, she incurred neck and back injuries in a car accident. In April 1987, Mrs. Gallow again injured her neck in a car accident.
Dr. Frederick L. Mayer, an orthopedic surgeon who did an independent medical exam of Mrs. Gallow, stated that he didn’t know whether her symptoms were secondary to the old injuries or to the Eckerd incident.
Dr. James Domingue, a neurologist who treated Mrs. Gallow in 1990, stated on cross-examination that, based on the osteoarthritis in her spine, Mrs. Gailow’s symptoms were not necessarily induced by an accident. He stated that even in the absence of trauma, up to 60% of women have similar symptoms at her age. However, he did state that the fact that the symptoms appeared after the incident makes it probable that the incident caused the injury.
Having reviewed the record as a whole, and especially in light of the ambiguous medical evidence, we conclude that the jury had before it sufficient evidence to form a reasonable factual basis for its conclusion that Mrs. Gailow’s injury did not result from negligence on the part of the defendants.
Plaintiffs finally argue that the jury verdict form confused the jury into believing they could not find negligence. However, no objection was made to the form prior to the time the jury retired to deliberate. As a result, plaintiffs have waived any possible objection to the form. Accordingly, this issue will not be considered on appeal. Streeter v. Sears, Roebuck and Co., Inc., 533 So.2d 54 (La.App. 3d Cir.1988), writ denied, 536 So.2d 1255 (La.1989).
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by the plaintiff.
AFFIRMED.
WOODARD, J., dissents and assigns reasons.